# Exhibit "A"

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Joriki USA Inc., | Case No. 25-10034 (LSS) |
| Debtor. | Re: D.I. __ |

**ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (II) AUTHORIZING THE
TRUSTEE TO ENTER INTO ONE OR MORE STALKING HORSE AGREEMENTS
AND TO PROVIDE BIDDING PROTECTIONS THEREUNDER, (III) SCHEDULING
AN AUCTION AND APPROVING THE FORM AND MANNER OF NOTICE
THEREOF, (IV) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, (V)
SCHEDULING A SALE HEARING AND APPROVING THE FORM AND MANNER OF
<u>NOTICE THEREOF AND (VI) GRANTING RELATED RELIEF</u>**

This matter coming before the Court on the *Motion for Entry of Orders (I)(A) Approving
Bidding Procedures for the Sale of Substantially All of the Debtor's Assets, (B) Authorizing the
Trustee to Enter into One or More Stalking Horse Agreements and to Provide Bidding Protections
Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof,
(D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and
Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; and (II)(A)
Approving the Sale of the Debtor's Assets Free and Clear of Liens, Claims, Interests and
Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and
Unexpired Leases and (C) Granting Related Relief* [Docket No. •] (the "<u>Motion</u>")[1] filed by the
Alfred T. Giuliano (the "<u>Trustee</u>"), in his capacity as the Chapter 7 Trustee for the estate of Joriki
USA, Inc. (the "<u>Debtor</u>"); the Court having reviewed the Motion and all supporting pleadings and
having considered the statements of counsel and the evidence adduced with respect to the Motion

---

[1] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion, the Supplement or in the Bidding Procedures, as applicable.

at a hearing before the Court on [DATE], to consider certain of the relief requested in the Motion and after due deliberation, this Court having determined that the legal and factual bases set forth in the Motion establishes just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate and its creditors, and the Trustee having demonstrated good, sufficient and sound business justifications for the relief granted herein;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     Notice of the Motion and all supporting pleadings was sufficient under the circumstances and no other or further notice need be provided.

D.     The bidding procedures attached hereto as **<u>Exhibit 1</u>** (the "<u>Bidding Procedures</u>") are fair, reasonable and appropriate and are designed to maximize the value of the proceeds of one or more sales (each, a "<u>Sale Transaction</u>") of substantially all of the Debtor's assets (the "<u>Assets</u>").

E.     The Bidding Procedures comply with the requirements of Rule 6004-1(c) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

F.     The procedures set forth herein regarding the Debtor's assumption and assignment of executory contracts and unexpired leases (collectively, the "<u>Contracts</u>") in connection with any Sale Transaction (the "<u>Assumption and Assignment Procedures</u>") are fair,

reasonable and appropriate and comply with the provisions of section 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

G.      The Trustee has articulated good and sufficient business reasons for the Court to approve (i) the Bidding Procedures; (ii) the form and manner of notice of the Bidding Procedures, the Auction (as defined in the Motion) and the Sale Hearing (as defined in the Motion), substantially in the form attached hereto as **Exhibit 2** (the "Sale Notice") and **Exhibit 3** (the "Auction Notice"); (iii) the form and manner of notice to each relevant non-debtor counterparty to a Contract (each, a "Counterparty") of (a) the Trustee's calculation of the amount necessary to cure any defaults under an applicable Contract (the "Cure Costs") and (b) certain other information regarding the potential assumption and assignment of Contracts in connection with a Sale Transaction, substantially in the form attached hereto as **Exhibit 4** (the "Assumption and Assignment Notice"); and (iv) the Assumption and Assignment Procedures.

H.      The Bidding Procedures are reasonably designed to promote active bidding at and participation in the Auction, if necessary, to ensure that the highest or otherwise best value is generated for the Assets.

I.      Good and sufficient notice of the relief sought in the Motion has been provided under the circumstances, and no other or further notice is required except as set forth in the Bidding Procedures and the Assumption and Assignment Procedures. A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties in interest.

J.      The Sale Notice, the Auction Notice, and the Assumption and Assignment Notice are appropriate and reasonably calculated to provide all interested parties with timely and

proper notice of the Auction, the Sale Hearing, the Bidding Procedures, the Assumption and Assignment Procedures, the Trustee's proposed Cure Costs, any proposed assumption of a Contract in connection with a Sale Transaction and all relevant and important dates and deadlines with respect to the foregoing, and no other or further notice of the Auction, the sale of the Assets or the assumption and assignment of Contracts in connection therewith shall be required.

K.      Good and sufficient business reasons exist for the Court to authorize the "stalking horse" procedures set forth in Section II of the Bidding Procedures (the "Stalking Horse Procedures"), which permits the Trustee to designate a Stalking Horse Bidder and seek authorization of certain bidding protections pursuant to the terms of a Stalking Horse Agreement, including the payment of a "break-up" fee and an expense reimbursement (together, a "Termination Payment").

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      All objections to the relief granted in this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

**A.      The Bidding Procedures**

3.      The Bidding Procedures attached hereto as **Exhibit 1** are hereby approved and are incorporated herein by reference. The Bidding Procedures shall govern the bids and proceedings related to the Auction and the sale of the Assets. The Trustee is authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

4.      Any party holding a perfected security interest in any of the Assets may seek to credit bid all, or a portion of, such party's claims for its respective collateral in accordance with section 363(k) of the Bankruptcy Code (each such bid, a "Credit Bid").  For the avoidance of

doubt, the Consultation Party shall have the right at the Auction to credit bid all or any portion of the aggregate amount of the applicable outstanding secured obligations pursuant to section 363(k) of the Bankruptcy Code, and any such credit bid will be considered a Qualified Bid to the extent such bid complies with section 363(k) of the Bankruptcy Code; *provided that* such Credit Bid shall not constitute a Qualified Bid if the bid does not include a cash component sufficient to pay in full, in cash, the carve-out amount as provided for in the Financing Stipulation and all claims for which there are valid, perfect, and unavoidable liens on any assets included in such Credit Bid that are senior in priority to those of the party seeking to credit bid (unless such lender consents to alternative treatment), if applicable.

        5.      Subject to this Order and the Bidding Procedures, the Trustee, in the exercise of his reasonable business judgment and in a manner consistent with his fiduciary duties and applicable law, and in consultation with the Consultation Party, shall have the right to (a) determine which bidders qualify as "Qualified Bidders," and which bids qualify as "Qualified Bids;" (b) make final determinations as to which Assets or combinations of Assets for which the Trustee will conduct an Auction (each such Asset or group of Assets, an "<u>Auction Package</u>"); (c) select the Baseline Bid (as defined in Section VII.B.2 of the Bidding Procedures) for each Auction Package; (d) determine the amount of each Minimum Overbid; (e) determine the Leading Bid (as defined in Section VII.B.7 of the Bidding Procedures) for each Auction Package; (f) determine which Qualified Bid (as defined in Section VI.C of the Bidding Procedures) is the highest or otherwise best bid for each Auction Package (each such Qualified Bid, a "<u>Successful Bid</u>") and which Qualified Bid is the next highest and next best bid after the Successful Bid for an Auction Package (each such Qualified Bid, a "<u>Backup Bid</u>"); (g) reject any bid that is: (i) inadequate or insufficient; (ii) not in conformity with the requirements of this Order or any other

applicable order of the Court, the Bidding Procedures, the Bankruptcy Code or other applicable law; or (iii) contrary to the best interests of the Debtor and its estate; (h) adjourn or cancel the applicable Auction with respect to any or all of the Assets in accordance with the Bidding Procedures; and (i) adjourn the applicable Sale Hearing with respect to a Sale Transaction involving any or all of the Assets in accordance with the Bidding Procedures.

6.      In accordance with the Bidding Procedures, the Trustee, in the exercise of his reasonable business judgment and in a manner consistent with his fiduciary duties and applicable law, and after consulting with the Consultation Party, shall have the right to modify the Bidding Procedures, including to (a) extend or waive deadlines or other terms and conditions set forth herein; (b) adopt new rules and procedures for conducting the bidding and Auction process; (c) if applicable, provide reasonable accommodations to any additional Stalking Horse Bidder; and (d) otherwise modify the Bidding Procedures to further promote competitive bidding for and maximizing the of value of the Assets; provided, that, the Bid Deadline (as defined below) shall not be extended absent consultation with the Consultation Party.

**B.      Bid Deadline and Auction(s)**

7.      Any Prospective Bidder, other than a Stalking Horse Bidder, that intends to participate in any Auction must submit in writing to the Bid Notice Parties (as defined in Section X.A of the Bidding Procedures) a Qualified Bid on or before **February 28, 2025, at 4:00 p.m. (prevailing Eastern Time)**, or such other date as may be agreed to by the Trustee after consulting with the Consultation Party (the "Bid Deadline").  The Trustee shall promptly provide a copy of each Qualified Bid to the Consultation Party, unless the Consultation Party is a bidder for the applicable Asset(s).

8.      If the Trustee receives one or more Qualified Bids for an Asset, the Trustee shall conduct an Auction for such Asset. With respect to Assets for which the Trustee only receives

one Qualified Bid by the Bid Deadline, the Trustee, in his reasonable business judgment, and in consultation with the Consultation Party, may determine to consummate a Sale Transaction with the applicable Qualified Bidder (subject to Court approval) or include such Assets in the applicable Auction.

9.       The "<u>Auction</u>," if necessary, will be conducted (a) on **March 7, 2025, at 10:00 a.m. (prevailing Eastern Time)** either (i) at the offices of Fox Rothschild LLP, 1201 North Market Street, Suite 1200, Wilmington, DE 19801, or (ii) virtually, or (b) at such other time and location as designated by the Trustee, after consulting with the Consultation Party. If the Trustee conducts the Auction virtually, the Trustee will provide instructions setting forth how to attend the Auction to the participants and other attendees via electronic mail. The Trustee will provide notice (via electronic mail or otherwise) of any change in the date, time or location of the Auction to Qualified Bidders and the Consultation Party.

10.      The Trustee will file with the Court and serve on the Sale Notice Parties a notice (the "<u>Auction Notice</u>") setting forth (a) the date, time and location of the Auction; (b) the Assets the Trustee intends to sell at the Auction (each such Asset, an "<u>Asset</u>"); and (c) the date and time of the Sale Hearing on **March 4, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Auction Notice Deadline</u>").

11.      If held, the Auction will be transcribed and/or video recorded.

12.      In the event the Trustee determines not to hold an Auction for some or all of the Assets, the Trustee shall file with the Court and serve on the Sale Notice Parties (as defined in Section X.B of the Bidding Procedures) notice containing the following information (as applicable): (a) a statement that the Auction for the relevant Assets has been canceled; (b) the identity of the Successful Bidder; (c) a copy of the Successful Bid or a summary of the material

terms of such bid, including any assumption or assignment of Contracts contemplated thereby and (d) the date, time and location of the appliable Sale Hearing.

13.    Only Qualified Bidders shall be eligible to participate in the Auction, subject to any other limitations as the Trustee may reasonably impose in accordance with the Bidding Procedures. Qualified Bidders participating in the Auction must attend personally or through a duly authorized representative. The Trustee may establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder at the Auction.

14.    Each Qualified Bidder participating in the Auction shall confirm on the record that (a) it has not engaged in any collusion with respect to the Auction or the submission of any bid for any of the Assets; and (b) its Qualified Bid that gained the Qualified Bidder admission to participate in the Auction and each Qualified Bid submitted by the Qualified Bidder at the Auction constitutes a binding, good-faith and _bona fide_ offer to purchase the Assets identified in such bids.

15.    On **March 10, 2025**, the Trustee shall file with the Court and serve on the Sale Notice Parties a notice setting forth the results of the Auction (the "Notice of Auction Results"), which shall (a) identify each Successful Bidder and each Backup Bidder; (b) either include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bids, including any assumption and assignment of Contracts contemplated thereby; and (c) set forth the Supplemental Sale Objection Deadline (as defined below), the date, time and location of the Sale Hearing (as defined below) and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Auction.

## C. Sale Noticing and Objection Procedures

16. Objections to a sale of the Assets, including (a) any objection to the sale of Assets free and clear of liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code to a Successful Bidder and/or a Backup Bidder (as applicable) and (b) any objection to the entry of any Sale Order (each such objection, a "Sale Objection") shall be (i) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (ii) be filed with the Court; and (iii) served on the Objection Notice Parties (as defined in Section X.D of the Bidding Procedures) by no later than **March 12, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline").

17. Any party who fails to file and serve a timely Sale Objection in accordance with the terms of this Order shall be forever barred from asserting, at the applicable Sale Hearing or thereafter, any Sale Objection to the relief requested in the Motion, or to the consummation or performance of the applicable Sale Transaction(s), including the transfer of Assets to the applicable Successful Bidder free and clear of liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" to such sale for purposes of section 363(f) of the Bankruptcy Code.

18. Consummation of any Sale Transaction pursuant to a Successful Bid shall be subject to Court approval. The hearing to approve any Sale Transaction consummated in accordance with the Bidding Procedures (except in the case of a Sale Transaction contemplated by a Backup Bid that subsequently is deemed a Successful Bid) for the sale of any Assets (the Sale Hearing") shall be held before the Court on **March 14, 2025, (prevailing Eastern Time)**.

19. The Trustee may, in his reasonable business judgment (after consulting with the Consultation Party and the Successful Bidder(s)) adjourn or reschedule the Sale Hearing,

including by announcing such adjournment or rescheduling at the applicable Auction or in Court on the date of the applicable originally scheduled Sale Hearing.

20.     The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, and the Auction Notice, substantially in the form attached hereto as **Exhibit 3**, are approved, and no other or further notice of the proposed sale of the Assets, the Auction, the Sale Hearing, or the Sale Objection Deadline shall be required if the Trustee serve the Sale Notice and the Auction Notice in the manner provided in the Bidding Procedures and this Order.

21.     By no later than two days after the entry of this Order, the Trustee shall file with the Court and serve on the Sale Notice Parties the Sale Notice.

**D.     Assumption and Assignment Procedures**

22.     The Assumption and Assignment Notice, substantially in the form attached hereto as **Exhibit 4**, is approved, and no other or further notice of the Trustee's proposed Cure Costs with respect to Contracts listed on an Assumption and Assignment Notice is necessary or required.

23.     By no later than two business days after the entry of this Order, the Trustee shall file with the Court and serve on the applicable Counterparties the Assumption and Assignment Notice.

24.     Any objection to the Trustee's proposed Cure Costs (each such objection, a "Cure Objection") shall (a) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (b) be filed with the Court; and (c) served on the Objection Notice Parties by no later than **February 27, 2025, at 4:00 p.m. (prevailing Eastern Time)**.

25.     The Trustee (in consultation with the Consultation Party) and the objecting Counterparty shall first confer in good faith to attempt to resolve the Cure Objection without Court

intervention. If the parties are unable to consensually resolve the Cure Objection prior to the commencement of the applicable Sale Hearing, the Court shall make all necessary determinations relating to the applicable Cure Costs and Cure Objection at a hearing scheduled pursuant to paragraph 30 of this Order. If a Cure Objection is resolved in a manner that is not in the best interests of the Debtor and its estate, whether or not such resolution occurs prior to or after the closing of the applicable Sale Transaction, the Trustee may determine that any Contract subject to such resolved Cure Objection no longer will be assumed and assigned in connection with the applicable Sale Transaction (subject to the terms of the applicable Sale Transaction); provided, that, in the case of an unexpired lease of non-residential real property, such determination shall be made prior to the expiration of the applicable deadline to assume or reject unexpired leases under section 365(d)(4) of the Bankruptcy Code. All other objections to the Trustee's proposed assumption and assignment of the Debtor's right, title and interest in, to and under a Contract shall be heard at the applicable Sale Hearing.

26.     If a timely Cure Objection cannot otherwise be resolved by the parties, the Cure Objection may be heard at the applicable Sale Hearing or, at the option of the Trustee, in consultation with the Consultation Party, be adjourned to a subsequent hearing (each such Cure Objection, an "Adjourned Cure Objection"). An Adjourned Cure Objection may be resolved after the closing date of the applicable Sale Transaction. Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the Contract that was the subject of such Adjourned Cure Objection shall be deemed assumed and assigned to the applicable Successful Bidder as of the closing date of the applicable Sale Transaction.

27.     If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Cure Objection, the Counterparty forever shall be barred from asserting

any objection with regard to the cost to cure any defaults under the applicable Contract. The Cure Costs set forth in the applicable Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the Contract and satisfy the requirements of section 365(b) of the Bankruptcy Code, and the Counterparty to the Contract shall be bound by and deemed to have consented to the Cure Costs.

28.     In accordance with the Bidding Procedures, Qualified Bids shall be accompanied by Adequate Assurance Information (as defined in Section VI.A.10 of the Bidding Procedures). The Trustee shall use commercially reasonable efforts to furnish all available Adequate Assurance Information to applicable Counterparties as soon as reasonably practicable following his receipt of such information.

29.     Any Counterparty to a Contract proposed to be assumed by and assigned to a Successful Bidder at the Auction that wishes to object to the proposed assumption and assignment of the Contract, the subject of which objection is such Successful Bidder's (or any other relevant assignee's) proposed form of adequate assurance of future performance with respect to the Contract (each, such objection, an "Adequate Assurance Objection"), shall file with the Court and serve on the Objection Notice Parties an Adequate Assurance Objection, which must state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof, by **March 12, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Adequate Assurance Objection Deadline").

30.     The Trustee and a Counterparty that has filed an Adequate Assurance Objection shall first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention. If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, the Adequate Assurance

Objection and all issues of adequate assurance of future performance of the applicable Successful Bidder (or any other relevant assignee) shall be determined by the Court at the Sale Hearing.

31.     If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Adequate Assurance Objection, the Counterparty shall be forever barred from asserting any objection to the assumption and/or assignment of a Contract with regard to adequate assurance of future performance. The applicable Successful Bidder (or any other relevant assignee) shall be deemed to have provided adequate assurance of future performance with respect to a Contract in accordance with Bankruptcy Code sections 365(b)(1)(C), 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), notwithstanding anything to the contrary in the Contract or any other document.

32.     As soon as reasonably practicable after the closing of a Sale Transaction, the Trustee shall file with the Court and serve on the applicable Counterparties a notice containing the list of Contracts that the Debtor assumed and assigned pursuant to any asset purchase agreement with a Successful Bidder.

33.     The inclusion of a Contract or Cure Costs with respect to any Contract on any Assumption and Assignment Notice, shall not constitute or be deemed a determination or admission by the Debtor, any Stalking Horse Bidder, any Successful Bidder or any other party that such Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code, and shall not be a guarantee that such Contract ultimately will be assumed or assigned. The Debtor reserves all of its rights, claims and causes of action with respect to each Contract listed on any Assumption and Assignment Notice.

**E.     Other Related Relief**

34.     All persons and entities that participate in the Auction or bidding for any Asset during the Sale Process shall be deemed to have knowingly and voluntarily (i) consented to

the core jurisdiction of the Court to enter any order related to the Bidding Procedures, the Auction or any other relief requested in the Motion or granted in this Order; (ii) waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction or any other relief requested in the Motion or granted in this Order; and (iii) consented to the entry of a final order or judgment in connection with any disputes relating to the Bidding Procedures, the Auction or any other relief requested in the Motion or granted in this Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

35.     Notwithstanding the applicability of any of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014 or any other provisions of the Bankruptcy Rules or the Local Rules stating to the contrary, the terms and provisions of this Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Order is hereby waived.

36.     The Trustee is authorized to take all steps necessary or appropriate to implement the relief granted in this Order.

37.     This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

**Exhibit 1**

| | |
|---|---|
| In re: | Chapter 7 |
| Joriki USA Inc., | Case No. 25-10034 (LSS) |
| Debtor. | |

## BIDDING PROCEDURES

Alfred T. Giuliano (the "Trustee"), in his capacity as the Chapter 7 Trustee for the estate of Joriki USA, Inc. (the "Debtor"), will use the procedures set forth herein (the "Bidding Procedures") to conduct a marketing and sale process (including pursuant to an Auction (as defined below), if any) for the sale or sales (each a "Sale") of substantially all of the Debtor's assets (collectively, the "Assets"), through one or more sale transactions (each, a "Sale Transaction").

On February [•], 2025, the Trustee filed with the United States Bankruptcy Court for the District of Delaware (the "Court") its *Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtor's Assets, (B) Authorizing the Trustee to Enter into One or More Stalking Horse Agreements and to Provide Bidding Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief, and (II)(A) Approving the Sale of the Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. •] (the "Motion"). By the Motion, the Trustee sought, among other things, entry of an order approving the Bidding Procedures for soliciting bids for the Assets, conducting an auction (the "Auction") of the Assets, and consummating one or more Sale Transactions, as further described herein.

On [•], 2025, the Court entered an *Order (I) Approving Bidding Procedures for the Sale of Substantially All of the Debtor's Assets, (II) Authorizing the Trustee to Enter into One or More Stalking Horse Agreements and to Provide Bidding Protections Thereunder, (III) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (IV) Approving Assumption and Assignment Procedures, (V) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (VI) Granting Related Relief* [Docket No. •] (the "Bidding Procedures Order").[1]

---

[1] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms later in these Bidding Procedures or in the Motion and/or the Bidding Procedures Order, as applicable.

## I.    ASSETS FOR SALE

The Trustee intends to sell all or substantially all of the Debtor's Assets. A Prospective Bidder (as defined in Section IV below) may bid on all or any combination of the Assets, subject to the conditions set forth herein.

The ability to undertake and consummate any sale of the Assets pursuant to these Bidding Procedures shall be subject to competitive bidding, as set forth herein, and approval by the Court. In addition to the Stalking Horse Bids (as defined in the Motion), and subject to the terms herein, the Trustee will consider bids for any or all of the Assets in a single bid from a single bidder or in multiple bids from multiple bidders. Any bid for an individual Asset, even if such bid is the highest or best bid for such individual Asset, is subject to higher or better bids (including any Credit Bid (as defined in Section VI.A.3.a below)) on packages of Assets that include the individual Asset. Additionally, any bid on all of the Assets is subject to bids on individual Assets or packages of Assets (including Credit Bids) that are, in the aggregate, higher or better bids.

Any party interested in submitting a bid for any of the Debtor's Assets should contact the Trustee's proposed counsel:

Jesse M. Harris, Esq.,
Two Commerce Square
2001 Market Street
Suite 1700
Philadelphia, PA 19103
(215) 299-2864
jesseharris@foxrothschild.com

## II.    STALKING HORSE PROCEDURES

The Trustee may, as he deems necessary or appropriate, and after consulting with the Consultation Party (as defined in Section XI below), enter into one or more asset purchase agreements with one or more "stalking horse" bidders that the Trustee designates to serve as such (each such agreement, a "<u>Stalking Horse Agreement</u>" and, each such bidder, a "<u>Stalking Horse Bidder</u>" and, the bid of any such Stalking Horse Bidder, a "<u>Stalking Horse Bid</u>"). The Trustee, subject to the approval and consent of the Consultation Party, also may determine to provide certain bidding protections to designated Stalking Horse Bidders, including a "break-up" fee and an expense reimbursement (together, a "<u>Termination Payment</u>"), in each case, in accordance with the terms of the applicable Stalking Horse Agreement.

A Stalking Horse Bid may also take the form of a Credit Bid, including a credit bid by the Consultation Party.

1.    <u>Stalking Horse Notice</u>. Within two business days after executing a Stalking Horse Agreement, the Trustee will file with the Court and serve on the Sale Notice Parties (as defined in Section X.B below) a notice setting forth the material terms of the proposed Stalking Horse Agreement, including (a) the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly-formed entity, then the

Stalking Horse Bidder's parent company or sponsor); (b) the specific Assets subject to the Stalking Horse Bid; (c) the amount of the Stalking Horse Bid (the "Stalking Horse Bid Amount"); (d) the terms and conditions of any Termination Payment to be provided under the Stalking Horse Agreement; and (e) the deadline to object to the Stalking Horse Bidder designation and any relevant Termination Payment (each such notice, a "Stalking Horse Notice").

2.   Deadline to Designate Stalking Horse Bidders. Any Stalking Horse Bidder designated by the Trustee in accordance with these Bidding Procedures will be designated by no later than **February 21, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Stalking Horse Bidder Designation Deadline"), provided, that, the Trustee may, in his reasonable business judgment, after consulting with the Consultation Party, extend the Stalking Horse Bidder Designation Deadline.

In the event the Trustee designates a Stalking Horse Bidder after the occurrence of the Stalking Horse Bidder Designation Deadline, but prior to the Auction (as defined in Section VII below), the Trustee may seek Court approval on an expedited basis of such Stalking Horse Bidder and the related Stalking Horse Agreement, including any Termination Payment provided thereunder. The Trustee reserves his right to file such a motion at any time after the Stalking Horse Bidder Designation Deadline and prior to the Auction. Prior to the filing of any such motion, the Trustee will consult with the Consultation Party with respect to the designation of such a Stalking Horse Bidder and Stalking Horse Agreement.

3.   Stalking Horse Hearing. The Trustee will request that the Court schedule a hearing (the "Stalking Horse Hearing") to be held, subject to the Court's availability, on **February 27, 2025**, to consider approval of any applicable Stalking Horse Agreement(s) and the provision of any Termination Payment to be provided thereunder.

4.   Bidding Protection Objections. Any objection to the designation of, or provision of a Termination Payment to, a Stalking Horse Bidder in accordance with this Section II (each such objection, a "Bidding Protection Objection") must (a) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; and (b) be filed with the Court and served on the applicable Objection Notice Parties (as defined in Section X.D. below) **within three calendar days after service of the applicable Stalking Horse Notice**.

If the parties are unable to consensually resolve a Bidding Protection Objection, such Bidding Protection Objection will be heard and resolved by the Court at the Stalking Horse Hearing.

5.   Failure to File a Timely Bidding Protection Objection. If no timely Bidding Protection Objection is filed and served in accordance with these Bidding Procedures, the Trustee may file, upon certification of counsel and after consulting with the Consultation Party, a proposed order authorizing and approving the

Trustee's entry into the applicable Stalking Horse Agreement and the provision of a Termination Payment thereunder in lieu of holding a Stalking Horse Hearing.

## III.   GLOBAL SALE PROCESS KEY DATES AND DEADLINES[2]

| KEY DATES AND DEADLINES FOR AUCTION | |
| --- | --- |
| **Deadline for Trustee to file and serve Sale Notice** | Two business days after entry of the Bidding Procedures Order |
| **Deadline for Trustee to file and serve Assumption and Assignment Notice** | Two business days after entry of the Bidding Procedures Order |
| **Stalking Horse Bidder Designation Deadline** | **February 21, 2025**, at 4:00 p.m. (prevailing Eastern Time) |
| **Bidding Protection Objection Deadline** | Three calendar days after service of the applicable Stalking Horse Notice (as defined below) |
| **Stalking Horse Hearing** | **February 27, 2025**, subject to the availability of the Court. |
| **Sale Objection Deadline for All Assets** | **February 27, 2025**, at 4:00 p.m. (prevailing Eastern Time) |
| **Cure Objection Deadline for All Potentially Assumed Contracts** | **February 27, 2025**, at 4:00 p.m. (prevailing Eastern Time) |
| **Bid Deadline for All Assets** | **February 28, 2025**, at 4:00 p.m. (prevailing Eastern Time) |
| **Auction Notice Deadline** | **March 4, 2025**, at 4:00 p.m. (prevailing Eastern Time) |
| **Auction** | **March 7, 2025**, at 10:00 a.m. (prevailing Eastern Time) either (a) at the offices of Fox Rothschild LLP, 1201 North Market Street, Suite 1200, Wilmington, DE 19801, or (b) virtually. |
| **Deadline for Trustee to file and serve Notice of Auction Results** | **March 10, 2025** |
| **Adequate Assurance and Supplemental Sale Objection Deadlines for Assets** | **March 12, 2025**, at 4:00 p.m. (prevailing Eastern Time) |
| **Sale Hearing** | **March 14, 2025**, subject to the availability of the Court |
| **Deadline to obtain entry of the Sale Order** | [TBD] |
| **Deadline to consummate approved Sale Transaction(s)** | [TBD] |

---

[2]   Capitalized terms used but not defined in this chart shall have the respective meanings ascribed to such terms later in these Bidding Procedures or the Motion or the Bidding Procedures Order, as applicable.

## IV.    DUE DILIGENCE

Each person or entity that desires to participate in the Auction (each, a "Prospective Bidder") must first deliver to each of the Bid Notice Parties (as defined in Section X.A below) the following:

- an executed confidentiality agreement, in form and substance satisfactory to the Trustee;
- a statement and other factual support demonstrating to the Trustee, in the exercise of his reasonable business judgment, that the Prospective Bidder has a bona fide interest in purchasing some or all of the Assets; and
- preliminary proof by the Prospective Bidder of its financial capacity to close a proposed Sale Transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Prospective Bidder (or, if the Prospective Bidder is an entity formed for the purpose of acquiring the Assets to be sold, the party that will bear liability for a breach by the Prospective Bidder of an asset purchase agreement or other agreement entered into in respect of an applicable Sale Transaction), the adequacy of which the Trustee and his advisors will determine in their sole discretion.

A Stalking Horse Bidder is a Prospective Bidder and a Qualified Bidder (as defined in Section VI.C below).

Upon execution of a valid confidentiality agreement and subject to the other limitations and guidelines set forth herein, the Trustee may grant a Prospective Bidder that the Trustee identify as reasonably likely to become a Qualified Bidder with access to information allowing such Prospective Bidder to conduct due diligence with respect to the potential acquisition of some or all of the Assets. The Trustee will post in the Debtor's electronic data room substantially all written due diligence provided to any Prospective Bidder.

If the Trustee determines that a Prospective Bidder is unlikely to qualify as a Qualified Bidder or fails to become a Qualified Bidder, then such Prospective Bidder shall have no further right to access due diligence or any other non-public information. The Prospective Bidder shall return or destroy any non-public information the Trustee or his advisors provided to the Prospective Bidder in accordance with the terms of the confidentiality agreement executed by the Trustee and the Prospective Bidder.

The Trustee will work to accommodate all reasonable requests from Prospective Bidders for additional information and due diligence access. All due diligence requests shall be directed to the Trustee's proposed counsel:

Jesse M. Harris, Esq.,
Two Commerce Square
2001 Market Street
Suite 1700
Philadelphia, PA 19103
(215) 299-2864
jesseharris@foxrothschild.com

## V. BID DEADLINE

Any Prospective Bidder, other than a Stalking Horse Bidder, that intends to participate in the Auction must submit in writing to the Bid Notice Parties a Qualified Bid (as defined in Section VI.C below) on or before **February 28, 2025, at 4:00 p.m. (prevailing Eastern Time)**, or such other date as may be agreed to by the Trustee after consulting with the Consultation Party (the "Bid Deadline"). The Trustee shall promptly provide a copy of each bid to each of the Consultation Party, unless a Consultation Party is a bidder for the applicable Asset(s).[3]

## VI. BID REQUIREMENTS

### A. Qualified Bid Requirements

To qualify as a "Qualified Bid," a bid must be in writing and determined by the Trustee, in consultation with the Consultation Party, to satisfy the following requirements:

1. Identification of Bidder. A Qualified Bid must fully disclose the following: (a) the legal identity of each person or entity bidding for the applicable Assets and/or otherwise sponsoring, financing (including through the issuance of debt in connection with such bid), or participating in (including through license or similar arrangement with respect to the Assets to be acquired in connection with such bid) the Auction in connection with such bid and the complete terms of any such participation; and (b) any past or present connections or agreements with the Debtor or its non-debtor affiliates, a Stalking Horse Bidder, any other known Prospective Bidder or Qualified Bidder, any Secured Party or any officer or director of any of the foregoing (including any current or former officer or director of the Debtor or its non-debtor affiliates).

2. Purchased Assets. A Qualified Bid must identify the following:

   a) the Assets to be purchased, including any executory contracts and unexpired leases (collectively, the "Contracts") that, as of the submission of such bid, the Prospective Bidder proposes to be assumed and assigned by the Debtor in connection with the proposed Sale Transaction; provided, that, any Successful

---

[3] This qualification applies to every instance where the Trustee is required to consult with the Consultation Party in these Bidding Procedures.

Bidder (as defined in Section VII.C.1 below) will have an opportunity to make a final determination regarding any such Contracts prior to closing an applicable Sale Transaction;

b) if applicable, any Assets included in the bid that the Prospective Bidder intends to operate as a going concern;

c) the liabilities, if any, to be assumed, including any debt to be assumed;

d) the valuation that the Prospective Bidder associates with each applicable Asset, including a description of any significant assumptions upon which each such valuation is based; and

e) if a bid is for more than one Asset, but not all Assets, an allocation of the purchase price across the individual Assets.

3. <u>Form of Consideration</u>.

a) **Credit Bidding**. A Prospective Bidder holding a perfected security interest in any of the Assets may seek to credit bid all or a portion of the Prospective Bidder's claims for its respective collateral (each such bid, a "<u>Credit Bid</u>") in accordance with section 363(k) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

b) **All-Cash Offer**. Unless a bid includes a Credit Bid, the bid must include a statement confirming that the bid is based on an all-cash offer.

4. <u>Minimum Bid for Stalking Horse Assets</u>. Each bid submitted in connection with Assets that are the subject of a particular Stalking Horse Bid (any such Assets, the "<u>Stalking Horse Assets</u>") must either (a)(i) be a bid for all of the Stalking Horse Assets in the Stalking Horse Bid and (ii) exceed the cash purchase price in the Stalking Horse Bid, plus any applicable Termination Payment; or (b) propose an alternative transaction that, in the Trustee's reasonable business judgment, provides higher or better terms than the Stalking Horse Bid, taking into account, among other things, any applicable Termination Payment.

The Trustee, in consultation with the Consultation Party, may consider a bid for a portion of any applicable Stalking Horse Assets (each such bid, a "<u>Partial Bid</u>") if (i) the Debtor receive another Partial Bid for the remaining Stalking Horse Assets such that, when taken together, the Partial Bids constitute a higher or otherwise better bid than the Stalking Horse Bid plus any applicable Termination Payment; or (ii) the Partial Bid proposes a purchase price for the applicable Stalking Horse Assets that, when taken together with the estimated liquidation value of the remaining

applicable Stalking Horse Assets, exceeds the purchase price in the Stalking Horse Bid plus any applicable Termination Payment.

The Trustee, in consultation with the Consultation Party, may consider a bid for a portion, or the entirety, of Assets subject to an applicable Stalking Horse Bid together with other Assets that are not the subject of any Stalking Horse Bid (each such bid, a "Mixed Bid") if the Trustee determine, in his reasonable business judgment, that the Mixed Bid provides more value to the Debtor's estate than the applicable Stalking Horse Bid, taking into account, among other things, the estimated liquidation value of the Assets not the subject to any Stalking Horse Bid, the estimated liquidation value of the remaining Stalking Horse Assets not subject to the Mixed Bid and any applicable Termination Payment.

If the value of a bid (whether such bid is for all of the applicable Stalking Horse Assets, is a Partial Bid or is a Mixed Bid) relative to the applicable Stalking Horse Bid includes additional non-cash components (such as fewer contingencies than are in the applicable Stalking Horse Agreement), the bidder should include an analysis or description of the value of any such additional non-cash components, including any supporting documentation, to assist the Trustee in better evaluating the competing bid.

5.    Proposed Asset Purchase Agreement. A Qualified Bid must constitute an irrevocable offer and be in the form of an asset purchase agreement reflecting the terms and conditions of the bid (each, a "Proposed Asset Purchase Agreement"). A Proposed Asset Purchase Agreement shall (a) be duly authorized and executed; (b) be based on, and marked against, the form asset purchase agreement provided by the Trustee to Prospective Bidders to reflect the proposed Sale Transaction and to show any other proposed modifications to the form purchase agreement; (c) specify the proposed purchase price for the applicable Assets in U.S. dollars; (d) include all exhibits and schedules contemplated thereby (other than exhibits and schedules that, by their nature, must be prepared by the Trustee); and (e) identify any Contracts that, as of the submission of such bid, the Prospective Bidder proposes to be assumed and assigned by the Debtor in connection with the proposed Sale Transaction.

6.    A Qualified Bid for Stalking Horse Assets must also include a marked copy of the applicable Stalking Horse Agreement showing the differences between the Stalking Horse Agreement and the Prospective Bidder's Proposed Asset Purchase Agreement.

7.    Proposed Sale Order. A Qualified Bid must include a proposed sale order (each, a "Proposed Sale Order") that is based on, and marked against, the form Sale Order attached to the Motion as Exhibit B to reflect the proposed Sale Transaction and to show any other proposed modifications to the form Sale Order.

A Qualified Bid for Stalking Horse Assets must also include a marked copy of any Sale Order included or prepared in connection with any applicable Stalking Horse Bid (each, a "Stalking Horse Sale Order") showing the differences between the Stalking Horse Sale Order and the Prospective Bidder's Proposed Sale Order.

8. <u>Financial Information</u>. A Qualified Bid must include the following:

    a) a statement that the Prospective Bidder is financially capable of consummating the Sale Transaction contemplated by the Prospective Bidder's Proposed Asset Purchase Agreement and Proposed Sale Order;

    b) sufficient evidence, as reasonably determined by the Trustee (in consultation with the Consultation Party), to determine that the Prospective Bidder has, or will obtain no later than the Auction date, the financial wherewithal to consummate the Sale Transaction contemplated by the Prospective Bidder's Proposed Asset Purchase Agreement and Proposed Sale Order; and

    c) Adequate Assurance Information (as defined in Section VI.A.9 below) with respect to any Contracts included or that may be included in the Prospective Bidder's bid, including the identity of any known proposed assignee of the applicable Contracts (if different from the Prospective Bidder), including contact information for such proposed assignee.

9. <u>Good Faith Deposit</u>. Each Qualified Bid must be accompanied by a good faith deposit (each, a "Good Faith Deposit") in the form of cash in an amount equal to 10% of the cash portion of the proposed purchase price for the applicable Assets (inclusive of any amount thereof comprising any applicable Credit Bid consideration); *provided*, that any Credit Bid shall not be required to be accompanied by a deposit.

Good Faith Deposits shall be deposited in a segregated account controlled by the Trustee and held in escrow until no later than 10 business days after the conclusion of the Auction (except for the Good Faith Deposit of any bidder who is selected at such Auction as a Successful Bidder or as a Backup Bidder (as defined in Section VI.A.12.a below)) and thereafter returned to the respective Qualified Bidders in accordance with Section VII.D of these Bidding Procedures; <u>provided</u>, <u>that</u>, the return of any Good Faith Deposit of a Stalking Horse Bidder may be governed by the applicable Stalking Horse Agreement.

10. <u>Adequate Assurance</u>. A Qualified Bid must include evidence of the Prospective Bidder's (or any other relevant assignee's) ability to comply with section 365 of the Bankruptcy Code (to the extent applicable),

including providing adequate assurance of such Prospective Bidder's (or any other relevant assignee's) ability to perform future obligations arising under any Contracts included in its bid. The Trustee may require the following information in connection with demonstrating adequate assurance of future performance: (a) information evidencing the Prospective Bidder's (or any other relevant assignee's) financial wherewithal and willingness to perform under any Contracts included in the bid, which information may include (i) a corporate organizational chart or similar disclosure identifying corporate ownership and control, (ii) financial statements, (iii) tax returns and (iv) annual reports; and (b) the Prospective Bidder's (or any other relevant assignee's) proposed use of any leased premises or other property included in the bid (the information described in clauses (a) and (b) of this Section VI.A.9, the "Adequate Assurance Information").

All Adequate Assurance Information must be in a form that will permit its immediate dissemination to the applicable Counterparties.

11.    Representations and Warranties. A Qualified Bid must include the following representations and warranties:

    a)    a statement that the Prospective Bidder has had an opportunity to conduct any and all due diligence regarding the Debtor's business and the applicable Assets prior to submitting its bid; and

    b)    a statement that the Prospective Bidder has relied solely upon its own independent review, investigation and/or inspection of any relevant documents and the Assets in making its bid and did not rely on any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Debtor's businesses or the applicable Assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in a Stalking Horse Agreement or any asset purchase agreement ultimately accepted and executed by the Trustee.

12.    Authorization. A Qualified Bid must (a) include evidence of authorization and approval from the Prospective Bidder's board of directors (or comparable governing body) with respect to the submission, execution and delivery of any bid for the Assets, participation in the Auction and closing of the Sale Transactions contemplated by the Prospective Bidder's Proposed Asset Purchase Agreement and Proposed Sale Order; or (b) if the Prospective Bidder is an entity formed for the purpose of effecting the proposed Sale Transaction, provide written evidence acceptable to the Trustee of authorization and the approval by the equity holder(s) of such Prospective Bidder.

13.    <u>Other Requirements</u>. A Qualified Bid must:

a)    state that the Prospective Bidder agrees to serve as a backup bidder (a "<u>Backup Bidder</u>") if such bidder's Qualified Bid is selected at the Auction as the next highest or next best bid after the Successful Bid (as defined in Section VII.C.1 below) for the applicable Assets (each such bid, a "<u>Backup Bid</u>");

b)    state that the bid represents a binding, good-faith and <u>bona fide</u> offer to purchase the applicable Assets and is not subject to or conditioned on any further due diligence, is not subject to or conditioned on any antitrust or other applicable regulatory approval and is irrevocable (i) until the selection of the Successful Bid in accordance with these Bidding Procedures; or (ii) if the bid is selected as a Successful Bid or as a Backup Bid, until the Backup Bid Expiration Date (as defined in Section VII.C.2 below);

c)    expressly state and acknowledge that the Prospective Bidder, unless the Prospective Bidder is the Stalking Horse Bidder, shall not be entitled to a break-up fee, termination fee, expense reimbursement or other "bidding protection" in connection with submitting a bid for the applicable Assets or otherwise participating in the Auction or the Sale Process, unless otherwise granted by the Trustee and approved by an order of the Court;

d)    state that the Prospective Bidder is committed to closing the Sales Transactions contemplated in its bid as soon as practicable;

e)    expressly waive any claim or right, unless you are the Stalking Horse Bidder, to assert any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code in connection with bidding for any of the Assets and/or otherwise participating in the Auction or the Sale Process;

f)    not contain any financing contingencies of any kind;

g)    include a covenant to cooperate with the Trustee to provide pertinent factual information regarding the Prospective Bidder's operations reasonably required to analyze issues arising with respect to any applicable laws and regulatory requirements;

h)    state whether the Prospective Bidder intends to offer future employment to any of the Debtor's employees and whether it intends to assume the Debtor's prepetition compensation, incentive, retention, bonus or other compensatory arrangements, plans or agreements, including offer letters, employment agreements, consulting agreements, severance arrangements, retention bonus

agreements, change in control agreements, retiree benefits and any other employment related agreements;

i)  state or otherwise estimate the types of, and costs or charges for, transition services, if any, the Prospective Bidder would require of and/or provide to the Trustee, including an estimate of the time any such transition services would be required of and/or provided to the Trustee, if the Prospective Bidder's bid were selected as the Successful Bid for the applicable Assets;

j)  certify that the Prospective Bidder did not collude with any other bidders and is not otherwise a partnership, joint venture or other entity in which more than one bidder (or any affiliates of a bidder) has a direct or indirect interest, unless consented to in writing by the Trustee;

k)  include a covenant to comply with the terms of these Bidding Procedures and the Bidding Procedures Order; and

l)  include contact information for the specific person(s) the Trustee should contact in the event they have any questions about the Prospective Bidder's bid.

14.  <u>Discretionary Qualification</u>. Notwithstanding the foregoing requirements of Section VI.A, the Trustee, at his own discretion and in accordance with his fiduciary duties and applicable law, may treat any bid received before the Bid Deadline as a Qualified Bid.

For the avoidance of doubt, any bid, other than a Stalking Horse Bid, that requires any form of future or current payment from the estate in the form of an expense reimbursement, purchase price adjustment or working capital adjustment, termination or breakup fee, or similar arrangement, shall not be considered a Qualified Bid.

**B.      Bid Review Process**

The Trustee will evaluate timely bids in consultation with the Consultation Party. Based upon his evaluation of the content of each bid, the Trustee may, as they deem appropriate in his reasonable business judgment and in a manner consistent with his fiduciary duties and applicable law, engage in negotiations with any Prospective Bidder for the purposes of (i) curing any deficiencies in a bid that prevents it from constituting a Qualified Bid, (ii) improving the terms of the Prospective Bidder's bid or (iii) otherwise promoting a more competitive bidding and Auction process with the ultimate goal of maximizing the value of the Assets.

In evaluating a bid, the Trustee may take into consideration any and all factors that the Trustee deems reasonably pertinent, including (i) the amount of the proposed purchase price and proposed form of consideration; (ii) any Assets included in, or excluded from, the bid, including any Contracts marked for assumption and assignment; (iii) the value to be provided to the Debtor under the bid, including the net economic effect on the Debtor's estate (talking into

account any Stalking Horse Bidder's rights with respect to any Termination Payment); (iv) any benefit to the Debtor's estate from any assumption or waiver of liabilities contemplated by the bid; (v) the structure of the proposed Sale Transaction and any attendant execution risk, including conditions to, timing of and certainty of closing; termination provisions; financing contingencies; availability of financing and general financial wherewithal to meet all commitments and any required governmental approvals; and (vi) the impact of the proposed Sale Transaction on the Debtor's employees, trade creditors, landlords and any other parties in interest.

The Trustee, in consultation with the Consultation Party, will make a determination regarding the bids that qualify as Qualified Bids and as Baseline Bids (as defined in Section VII.B.2 below) and will notify the applicable bidders as to whether they have been selected as Qualified Bidders as soon as commercially reasonable following the Bid Deadline, but no later than two days before the Auction. A Qualified Bidder shall not (without the consent of the Trustee), modify, amend or withdraw its Qualified Bid, unless for the purposes of increasing the purchase price or otherwise improving the terms of the bid, as determined by the Trustee in his reasonable business judgment.

### C. Qualified Bidders

A bid received for all or any portion of the Assets that the Trustee (in consultation with the Consultation Party) determine satisfies the requirements set forth in Sections V and VI above will qualify as a "Qualified Bid," and any bidder that submits a Qualified Bid (including any Stalking Horse Bidder) will qualify as a "Qualified Bidder."

In the case of a Credit Bid for Assets securing their respective debt, the Consultation Party is a Qualified Bidder, and each such Credit Bid is a Qualified Bid, to the extent such bid (i) is received by the Bid Notice Parties by the Bid Deadline; (ii) complies with the applicable requirements set forth under Section V and Section VI above; and (iii) complies with section 363(k) of the Bankruptcy Code; *provided*, *however*, that the Consultation Party shall be deemed to be a Qualified Bidder (and any bid submitted by them, a Qualified Bid) without the need to satisfy any of the other requirements placed on Qualified Bidders hereunder.

The Trustee may, in his reasonable business judgment, in a manner consistent with his fiduciary duties and applicable law, and in consultation with the Consultation Party, amend or waive the conditions precedent to qualifying as a Qualified Bidder.

### D. Consultation Party's Right to Credit Bid

The Consultation Party shall have the right at the Auction to credit bid all or any portion of the aggregate amount of their applicable outstanding secured obligations pursuant to section 363(k) of the Bankruptcy Code, and any such Credit Bid will be considered a Qualified Bid to the extent such bid complies with section 363(k) of the Bankruptcy Code; *provided that* a Credit Bid shall not constitute a Qualified Bid if the bid does not include a cash component sufficient to pay in full, in cash, the carve-out amount as provided for in the Financing Stipulation and all claims for which there are valid, perfected, and unavoidable liens on any assets included in such Credit Bid that are senior in priority to those of the party seeking to credit bid (unless such lender consents to alternative treatment), if applicable.

### E. Bidding Protections

Other than any Termination Payment provided to a Stalking Horse Bidder pursuant to the terms of a Court-approved Stalking Horse Agreement, no bidder or any other party shall be entitled to any expense reimbursement or termination or "break-up" fee, or any other bidding protection in connection with the submission of a bid for the Assets or otherwise participating in the Auction or the Sale Process, unless otherwise granted by the Trustee, approved by the Consultation Party, and approved by an order of the Court.

## VII. THE AUCTION

If the Trustee receives one or more Qualified Bids (including a combination of bids that, when considered together, constitute a Qualified Bid) for an Asset, the Trustee will conduct an Auction for such Asset. With respect to Assets for which the Trustee receives only one Qualified Bid by the Bid Deadline, the Trustee may, in his reasonable business judgment, and in consultation with the Consultation Party, determine to consummate a Sale Transaction with the applicable Qualified Bidder or include such Assets in the Auction. In the event the Trustee determine not to hold an Auction for some or all of the Assets, the Trustee will file with the Court, serve on the Sale Notice Parties a notice containing the following information, as applicable: (i) a statement that the Auction for the relevant Asset or Assets has been canceled; (ii) the identity of the Successful Bidder; (iii) a copy of the Successful Bid or a summary of the material terms of such bid, including any assumption and assignment of Contracts contemplated thereby; and (iv) the date, time and location of the Sale Hearing.

The "Auction," if required, will be conducted (i) on **March 7, 2025** either (a) at the offices of Fox Rothschild LLP, 1201 North Market Street, Suite 1200, Wilmington, DE 19801, or (b) virtually, or (ii) at such other date, time or location as designated by the Trustee, after consulting with the Consultation Party. If the Trustee conducts the Auction virtually, the Trustee will provide instructions setting forth how to attend the Auction to the participants and other attendees via electronic mail. The Trustee will provide notice (via electronic mail or otherwise) of any change in the date, time or location of the Auction to Qualified Bidders and the Consultation Party.

The Trustee will file with the Court and serve on the Sale Notice Parties a notice (the "Auction Notice") setting forth (i) the date, time and location of the Auction, (ii) the Assets the Trustee intends to sell at the Auction (each such Asset, an "Asset"); and (iii) the date and time of the Sale Hearing on **March 4, 2025**, **at 4:00 p.m. (prevailing Eastern Time)** (the "Auction Notice Deadline").

If held, the Auction will be transcribed and/or video recorded.

### A. Participants and Attendees

Only Qualified Bidders are eligible to participate in the Auction, subject to other limitations as may be reasonably imposed by the Trustee in accordance with these Bidding Procedures. Qualified Bidders participating in the Auction must attend the Auction personally or through a duly authorized representative. Subject to the Auction procedures set forth in Section VII, all Qualified Bidders and the Consultation Party are permitted to attend the Auction; provided, that, the Trustee may, in his sole discretion, establish a reasonable limit on the number of

representatives and/or professional advisors that may appear on behalf of a Qualified Bidder or otherwise attend the Auction. Notwithstanding the foregoing, the Auction will be conducted openly and all creditors will be permitted to attend (but, unless such creditor is a Qualified Bidder or Consultation Party, not participate in) the Auction, subject to reasonable limitations that may be imposed by the Trustee given space limitations and/or other applicable limitations if the Auction is conducted virtually; provided, that, any such creditor that wishes to attend the Auction must provide the Trustee written notice of his intent to attend such Auction two (2) business days prior to the Auction, which notice shall be sent via email to the Trustee's proposed counsel: Fox Rothschild LLP, Two Commerce Square, 2001 Market Street, Suite 1700, Philadelphia, PA 19103 (Attn: Michael Menkowitz, Esq. (mmenkowitz@foxrothschild.com) and Jesse Harris, Esq. (jesseharris@foxrothschild.com)).

Each Qualified Bidder participating in the Auction will be required to confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the Auction or the submission of any bid for any of the Assets and (ii) its Qualified Bid that gained the Qualified Bidder admission to participate in the Auction and each Qualified Bid submitted by the Qualified Bidder at the Auction is a binding, good-faith and bona fide offer to purchase the Assets identified in such bids.

All Prospective Bidders and Qualified Bidders (including any Stalking Horse Bidder, Successful Bidder and Backup Bidder) shall be deemed to have (i) consented to the core jurisdiction of the Court to enter any order related to these Bidding Procedures, the Auction, any other relief requested in the Motion or granted pursuant to the Bidding Procedures Order or the construction or enforcement of any agreement or any other document relating to any Sale Transaction; (ii) waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the Auction or the construction or enforcement of any agreement or any other document relating to any Sale Transaction; and (iii) consented to the entry of a final order or judgment in connection with any disputes relating to these Bidding Procedures, the Auction or the construction or enforcement of any agreement or any other document relating to any Sale Transaction, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

### B. Auction Procedures

The Auction shall be governed by the following procedures, subject to the Trustee's right to modify such procedures in his reasonable business judgment (in a manner consistent with his fiduciary duties and in consultation with the Consultation Party):

1. Auction Packages. Prior to the commencement of any Auction, the Trustee (in consultation with the Consultation Party) will determine the Assets and/or combinations of Assets for which the Trustee will conduct an Auction (each such Asset or group of Assets, an "Auction Package"). For the avoidance of doubt, the Trustee may, in his reasonable business judgment (and in consultation with the Consultation Party), decide to include an individual Asset in more than one Auction Package.

2. <u>Baseline Bids</u>. Prior to the commencement of the Auction, the Trustee will determine, in his reasonable business judgment (and in consultation with the Consultation Party), the highest and/or best Qualified Bid submitted for each Auction Package (each such Qualified Bid, a "<u>Baseline Bid</u>"). Bidding for each Auction Package at the Auction shall commence at the amount of the applicable Baseline Bid.

3. <u>Minimum Overbid</u>. At each round of bidding for an Auction Package, Qualified Bidders may submit successive bids higher than the Leading Bid (as defined below) from the prior round, which initially will be based on and increased from the applicable Baseline Bid. After consulting with the Consultation Party, the Trustee will announce before the Auction, the minimum required increments for successive Qualified Bids (each, such bid, a "<u>Minimum Overbid</u>"); <u>provided</u>, <u>that</u>, to the extent that the Baseline Bid is a Stalking Horse Bid, the bidding for the applicable Stalking Horse Assets shall commence at an amount equal to the sum of (a) the purchase price in the Stalking Horse Bid, (b) the amount of any applicable Termination Payment; and (c) the amount of the applicable Minimum Overbid (each such bid, a "<u>Stalking Horse Overbid</u>"). The Trustee may, in his reasonable discretion (and in consultation with the Consultation Party), announce increases or reductions to Minimum Overbids or Stalking Horse Overbids at any time during the Auction.

Upon a Qualified Bidder's declaration of a bid at the Auction, the Qualified Bidder must state on the record its commitment to pay following the Auction, if such bid were to be selected as the Successful Bid or as the Backup Bid for the Auction Package, the incremental amount of the Qualified Bidder's Good Faith Deposit calculated based on the increased purchase price of such bid (such Good Faith Deposit so increased, the "<u>Incremental Deposit Amount</u>").

Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by any bid subsequent to a Baseline Bid, the Trustee will, at each round of bidding, consider and/or give effect to (a) any Termination Payment payable to any Stalking Horse Bidder under an applicable Stalking Horse Agreement; (b) any additional liabilities to be assumed by a Qualified Bidder under the bid, including whether such liabilities are secured or unsecured; and (c) any additional costs that may be imposed on the Trustee.

4. <u>No Round-Skipping</u>. Round-skipping, as described herein, is explicitly prohibited. To remain eligible to participate in the Auction, in each round of bidding, (a) each Qualified Bidder must submit a bid in such round of bidding that is a better offer than the immediately preceding bid submitted by a Qualified Bidder in such round of bidding and (b) to the extent a Qualified Bidder fails to bid in such round of bidding or to submit a bid in such round of bidding that is a better offer than the immediately preceding

bid submitted by a Qualified Bidder in such round of bidding, as determined by the Trustee in his reasonable business judgment (after consultation with the Consultation Party), such Qualified Bidder shall be disqualified from continuing to participate in the Auction for such Assets.

5.      <u>Overbid Alterations</u>. An Overbid may contain alterations, modifications, additions or deletions of any terms of the bid no less favorable to the Debtor's estate than any prior Qualified Bid or Overbid, as determined in the Trustee's business judgment, but shall otherwise comply with the terms of these Bidding Procedures.

6.      <u>Additional Information</u>. The Trustee has the right to request any additional information that will allow the Trustee to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by its proposal and any further information that the Trustee believes is reasonably necessary to clarify and evaluate any bid made by a Qualified Bidder during the Auction.

7.      <u>Leading Bid</u>. After the first round of bidding and between each subsequent round of bidding, the Trustee will announce, in consultation with the Consultation Party, the bid that he believes to be the highest or otherwise best offer for the Auction Package (each such bid, a "<u>Leading Bid</u>") and describe the material terms thereof. Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent bid with full knowledge of the material terms of the Leading Bid.

Each Auction may include open bidding in the presence of all other Qualified Bidders bidding on Assets designated for the Auction. Each Qualified Bidder shall have the right to be present for all rounds of bidding and to submit additional bids and make modifications to its Proposed Asset Purchase Agreement at the Auction to improve its bid. The Trustee may, in his reasonable business judgment, negotiate with any and all Qualified Bidders participating in the Auction.

The Trustee shall have the right to determine, in his reasonable business judgment (and in consultation with the Consultation Party), which bid is the highest or otherwise best bid with respect to the Auction Package and reject, at any time, without liability, any bid that the Trustee deem to be inadequate or insufficient, not in conformity with the requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), these Bidding Procedures, any order of the Court or the best interests of the Debtor and its estate.

## C.    Auction Results

1.    <u>Successful Bids</u>. Immediately prior to the conclusion of the Auction for an Auction Package, the Trustee, in consultation with the Consultation Party, will (a) determine, consistent with these Bidding Procedures, which Qualified Bid constitutes the highest or otherwise best bid(s) for the Auction Package (each such bid, a "<u>Successful Bid</u>") and (b) notify all Qualified Bidders at the Auction of the identity of the bidder that submitted the Successful Bid for the Auction Package (each such bidder, a "<u>Successful Bidder</u>") and the amount of the purchase price and other material terms of the Successful Bid. As a condition to remaining the Successful Bidder, the Successful Bidder shall, within two business days after the conclusion of the Auction, wire to the Debtor in immediately available funds the Incremental Deposit Amount, calculated based on the purchase price in the Successful Bid.

2.    <u>Backup Bids</u>. Immediately prior to the conclusion of the Auction for an Auction Package, the Trustee (in consultation with the Consultation Party) will (a) determine, in a manner consistent with these Bidding Procedures, which Qualified Bid is the Backup Bid for the Auction Package; and (b) notify all Qualified Bidders at the Auction for the Auction Package of the identity of the Backup Bidder for the Auction Package and the amount of the purchase price and other material terms of the Backup Bid.

A Backup Bid will remain binding on the applicable Backup Bidder until the earlier of (a) the first business day after the closing of a Sale Transaction with the Successful Bidder for the Auction Package and (b) 60 days after the Sale Hearing (such date, the "<u>Backup Bid Expiration Date</u>"). If the Sale Transaction with the applicable Successful Bidder is terminated prior to the Backup Bid Expiration Date, the Backup Bidder shall be deemed the new Successful Bidder for the Auction Package and shall be obligated to consummate the Backup Bid as if it were the Successful Bid at the Auction; <u>provided</u>, <u>that</u>, the Trustee may, in his reasonable business judgment (after consulting with the Consultation Party and providing notice to the Sale Notice Parties), elect not to pursue the Sale Transaction contemplated by the Backup Bid. The Trustee shall be authorized to consummate the bid of the Backup Bidder without further order of the Court or notice to parties in interest.

3.    <u>Notice of Auction Results</u>. On **March 10, 2025** the Trustee will file with the Court and serve on the Sale Notice Parties a notice setting forth the results of the Auction (the "<u>Notice of Auction Results</u>"), which will (i) identify each Successful Bidder and each Backup Bidder; (ii) include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bids, including any proposed assumption and assignment of Contracts contemplated thereby; and (iii) set forth the Supplemental Sale Objection Deadline (as defined in Section X.D below),

the date, time and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Auction.

**D.     Disposition of Good Faith Deposit**

1.     <u>Prospective Bidders</u>. Within ten business days after the Trustee makes final determinations as to which Prospective Bidders qualify as Qualified Bidders for the Auction, the Trustee shall return to each Prospective Bidder that did not qualify as a Qualified Bidder, as confirmed by the Trustee, such Prospective Bidder's Good Faith Deposit exclusive of any interest. Upon the authorized return of a Prospective Bidder's Good Faith Deposit in accordance with this Section VII.D, the bid of such Prospective Bidder shall be deemed terminated and no longer binding against the Prospective Bidder.

2.     <u>Qualified Bidders</u>.

a)     **Forfeiture of Good Faith Deposit**. The Good Faith Deposit of a Qualified Bidder shall be forfeited if the Qualified Bidder attempts to withdraw its Qualified Bid, except as may be permitted by these Bidding Procedures, during the time the Qualified Bid remains binding and irrevocable under these Bidding Procedures. The Debtor's estate shall be entitled to retain the Qualified Bidder's Good Faith Deposit as partial compensation for the damages caused to the Debtor and its estate as a result of the Qualified Bidder's failure to adhere to the terms of these Bidding Procedures and/or the relevant Qualified Bid.

b)     **Return of Good Faith Deposit**. With the exception of the Good Faith Deposits of Successful Bidders and Backup Bidders, the Trustee shall return to any other Qualified Bidder the Qualified Bidder's Good Faith Deposit exclusive of any interest, within ten business days after the conclusion of the Auction for the Auction Package.

c)     **Backup Bidder**. The Trustee shall return a Backup Bidder's Good Faith Deposit, within ten business days after the occurrence of the applicable Backup Bid Expiration Date.

d)     **Successful Bidder**. At the closing of a Sale Transaction, the Successful Bidder shall be entitled to a credit against the purchase price for the applicable Assets in the amount of the Successful Bidder's Good Faith Deposit. The Good Faith Deposit of a Successful Bidder shall be forfeited if the Successful Bidder fails to consummate the applicable Sale Transaction because of a breach that entitles the Trustee to terminate the applicable asset purchase agreement with such Successful Bidder, and the Debtor's estate shall be entitled to

-19-

retain the Successful Bidder's Good Faith Deposit as partial compensation for the damages.

## VIII.  SALE HEARING

Each Successful Bid (including any Backup Bid that is subsequently deemed a Successful Bid) will be subject to Court approval. The hearing to approve any Sale Transaction consummated in accordance with these Bidding Procedures (except in the case of a Sale Transaction contemplated by a Backup Bid that subsequently is deemed a Successful Bid) for the sale of any Assets shall take place on **March 14, 2025** (the "Sale Hearing"), before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market Street, Wilmington, Delaware 19801.

At the Sale Hearing, the Trustee will seek entry of one or more orders (each, a "Sale Order") approving, among other things, one or more sales of the applicable Assets to the Successful Bidder(s).

The Trustee may, in his reasonable business judgment (after consulting with the Consultation Party and the Successful Bidder/s), adjourn or reschedule any or all Sale Hearing(s), including by announcing such adjournment or rescheduling at the Auction or in Court on the date of the applicable originally scheduled Sale Hearing.

The Trustee's presentation to the Court for approval of a selected Qualified Bid as a Successful Bid does not constitute the Trustee's acceptance of such bid. The Trustee will have accepted a Successful Bid only when such Successful Bid has been approved by the Court at the Sale Hearing. Upon the Court's approval of a Successful Bid, the Trustee will be bound by the terms of that Successful Bid with no further opportunity for an auction of the applicable Assets.

## IX.  RESERVATION OF RIGHTS TO MODIFY BIDDING PROCEDURES

The Trustee reserves the right to, in his reasonable business judgment, in a manner consistent with his fiduciary duties and applicable law, and after consulting with the Consultation Party, modify these Bidding Procedures, including to, among other things, extend or waive deadlines or other terms and conditions set forth herein; adopt new rules and procedures for conducting the bidding and Auction process; if applicable, provide reasonable accommodations to a Stalking Horse Bidder; or otherwise modify these Bidding Procedures to further promote competitive bidding for and maximizing the value of the Assets, in each case, to the extent not materially inconsistent with these Bidding Procedures or the Bidding Procedures Order.

## X.  NOTICING

### A.  Bid Notice Parties

Qualified Bids must be submitted in writing to the following parties (collectively, the "Bid Notice Parties"):

- the Trustee, 2301 E. Evesham Road, Pavillion 800, Suite 210, Voorhees, NJ 08043 (Attn: Alfred Giuliano); and

- proposed counsel for the Trustee, (i) Fox Rothschild LLP, Two Commerce Square, 2001 Market Street, Suite 1700, Philadelphia, PA 19103 (Attn: Michael Menkowitz, Esq. (mmenkowitz@foxrothschild.com) and Jesse Harris, Esq. (jesseharris@foxrothschild.com).

## B.      Sale Notice Parties

The "Sale Notice Parties" shall include the following persons and entities:

- the Consultation Party (as applicable);
- counsel to any Stalking Horse Bidder;
- all persons and entities known by the Trustee to have expressed an interest to the Trustee in a Sale Transaction involving any of the Assets during the past 6 months, including any person or entity that has submitted a bid for any of the Assets;
- all known creditors of the Debtor;
- all persons and entities known by the Bidder to have asserted any lien, claim, interest or encumbrance in the Assets (for whom identifying information and addresses are available to the Trustee);
- all relevant non-debtor parties (each, a "Counterparty") to any Contract that may be assumed or rejected in connection with a Sale Transaction;
- any governmental authority known to have a claim against the Debtor in this Chapter 7 Case;
- the office of the U.S. Trustee;
- all applicable federal, state and local taxing authorities, including the Internal Revenue Service;
- all of the parties entitled to notice pursuant to Bankruptcy Rule 2002; and
- other parties as directed by the Court.

## C.      Sale Notice and Publication Notice

Three business days after the entry of the Bidding Procedures Order, the Trustee will file with the Court and serve on the Sale Notice Parties a notice (the "Sale Notice") setting forth (i) a description of the Assets available for sale in accordance with these Bidding Procedures; (ii) the date, time and location of the Auction and Sale Hearing; (iii) the Sale Objection Deadline and Supplemental Sale Objection Deadlines (each as defined in Section X.D below) and the procedures for filing such objections; and, if applicable, (iv) a summary of the material terms of any Stalking Horse Agreement, including the terms and conditions of any Termination Payment to be provided thereunder, as of the date of the Sale Notice.

## D.      Sale Objections and Supplemental Sale Objections

Objections to a sale of the Assets, including any objections to (i) a sale of Assets free and clear of all liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy

Code and (ii) entry of any Sale Order (each such objection, a "Sale Objection") shall, by no later than **February 27, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline"), be filed with the Court and served on the following parties (collectively, the "Objection Notice Parties"):

- the Trustee, 2301 E. Evesham Road, Pavillion 800, Suite 210, Voorhees, NJ 08043 (Attn: Alfred Giuliano).
- counsel for the Trustee, (i) Fox Rothschild LLP, Two Commerce Square, 2001 Market Street, Suite 1700, Philadelphia, PA 19103 (Attn: Michael Menkowitz, Esq. (mmenkowitz@foxrothschild.com) and Jesse Harris, Esq. (jesseharris@foxrothschild.com);
- if applicable, counsel for any relevant Stalking Horse Bidder or relevant Successful Bidder(s); and
- if applicable, counsel for any relevant Backup Bidder(s).

Following service of the Notice of Auction Results, the Sale Notice Parties may object to the conduct of the Auction and/or the particular terms of any proposed Sale Transaction in a Successful Bid (each such objection, a "Supplemental Sale Objection") by **March 12, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Supplemental Sale Objection Deadline").

E. **Auction Notice**

No later than three days prior to the date of the Auction, the Trustee will file with the Court and serve on the Sale Notice Parties an Auction Notice setting forth: (i) the date, time and location of such Auction; (ii) the Assets that the Trustee intend to sell at the Auction; and (iii) the date and time of the Sale Hearing.

F. **Notices Regarding Assumption and Assignment of Contracts**

The Trustee will provide all notices regarding the proposed assumption and assignment of Contracts in accordance with the Assumption and Assignment Procedures set forth in the Bidding Procedures Order.

XI. **CONSULTATION BY THE TRUSTEE**

Throughout the Sale Process, the Trustee and his advisors will consult with **Bank of Nova Scotia**, as Administrative Agent (the "Consultation Party"), as provided in these Bidding Procedures, or as is otherwise necessary or appropriate, as determined in the Trustee's business judgment:

Notwithstanding the foregoing, the Trustee will not consult with or provide copies of any bids or other confidential information to any Consultation Party or any insider or affiliate of the Debtor if such party is an active bidder for any of the Assets at the applicable time.

For the avoidance of doubt, any consultation rights afforded to the Consultation Party by these Bidding Procedures or the Bidding Procedures Order shall not in any way limit the Trustee's

discretion and shall not include the right to veto any decision made by the Trustee in the exercise of his reasonable business judgment.

# **Exhibit 2**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| JORIKI USA INC.,[1] | Case No. 25-10034 LSS |
| Debtor. | |

## NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, SALE HEARING AND OTHER DEADLINES RELATED THERETO

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On February [•], 2025, Alfred T. Giuliano (the "<u>Trustee</u>"), the Chapter 7 Trustee for the estate of Joriki USA, Inc. (the "<u>Debtor</u>") in the above-captioned chapter 7 case (the "<u>Chapter 7 Case</u>"), filed with the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") a motion [Docket No. •] (the "<u>Motion</u>") seeking entry of (i) an order (the "<u>Bidding Procedures Order</u>") (a) approving bidding procedures (the "<u>Bidding Procedures</u>")[2] to be used in connection with one or more sales (each, a "<u>Sale Transaction</u>") of substantially all of the Debtor's assets (the "<u>Assets</u>"); (b) authorizing the Trustee to enter into one or more asset purchase agreements with one or more "stalking horse" bidders (each such agreement, a "<u>Stalking Horse Agreement</u>" and, each such bidder, a "<u>Stalking Horse Bidder</u>," and the bid of any such Stalking Horse Bidder, a "<u>Stalking Horse Bid</u>") and to provide certain bidding protections, including an expense reimbursement and a break-up fee, to any Stalking Horse Bidder in connection therewith; (c) scheduling an auction of the Assets (the "<u>Auction</u>") and a final hearing to consider approval of any proposed Sale Transaction(s) (the "<u>Sale Hearing</u>"); (d) approving the form and manner of notice of the Bidding Procedures, the Auction and the Sale Hearing; (e) approving procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "<u>Contracts</u>") in connection with any Sale Transaction; (f) approving the form and manner of notice to each relevant non-debtor counterparty to a Contract of the Trustee's calculation of the amount necessary to cure any defaults under an applicable Contract and certain other information regarding the potential assumption and assignment of Contracts in connection with a Sale Transaction; and (g) granting related relief; and (ii) one or more orders (each, a "<u>Sale Order</u>") (a) authorizing one or more Sale Transactions for a sale of the Assets free and clear of all liens, claims, interests and encumbrances, except certain permitted encumbrances as determined by the Trustee and any Successful Bidder (as defined below) for the applicable Assets, with liens to attach to the proceeds

---

[1]      The last four digits of the Debtor's Employer Identification Number are 5175.

[2]      Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or the Bidding Procedures, as applicable. Any summary of the Bidding Procedures or the Bidding Procedures Order (or any provision thereof) contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any inconsistency between any summary in this Sale Notice and the terms and conditions of either of the Bidding Procedures or the Bidding Procedures Order, the actual terms and conditions in those documents shall control.

of the applicable Sale Transaction; (b) authorizing the assumption and assignment of certain Contracts in connection with approved Sale Transactions; and (c) granting related relief.

On [•], 2025, the Court entered the Bidding Procedures Order [Docket No. [•].

## ASSETS FOR SALE

The Trustee is seeking to sell all or substantially all of the Debtor's Assets.

A Prospective Bidder (as defined in Section IV of the Bidding Procedures) may bid on all or any combination of the Assets, subject to the conditions set forth herein.

The ability to undertake and consummate any sale of the Assets pursuant to the Bidding Procedures shall be subject to competitive bidding, as set forth herein, and approval by the Court. In addition to the Stalking Horse Bids (as defined in the Motion), and subject to the terms herein, the Trustee will consider bids for any or all of the Assets in a single bid from a single bidder or in multiple bids from multiple bidders. Any bid for an individual Asset, even if such bid is the highest or best bid for such individual Asset, is subject to higher or better bids (including any Credit Bid (as defined in Section VI.A.3.a of the Bidding Procedures)) on packages of Assets that include the individual Asset. Additionally, any bid on all of the Assets is subject to bids on individual Assets or packages of Assets (including Credit Bids) that are, in the aggregate, higher or better bids.

Any party interested in submitting a bid for any of the Debtor's Assets should contact the Trustee's proposed counsel:

Jesse M. Harris, Esq.,
Two Commerce Square
2001 Market Street
Suite 1700
Philadelphia, PA 19103
(215) 299-2864
jesseharris@foxrothschild.com

## STALKING HORSE PROCEDURES

The Trustee may, as he deems necessary or appropriate, and after consulting with the Consultation Party (as defined in Section XI of the Bidding Procedures), enter into one or more Stalking Horse Agreements with one or more bidders that the Trustee designates to serve as Stalking Horse Bidder. The Trustee, subject to the approval and consent of the Consultation Party, may also determine to provide certain bidding protections to designated Stalking Horse Bidders, including a "break-up" fee and an expense reimbursement (together, a "Termination Payment"), in each case, in accordance with the terms of the applicable Stalking Horse Agreement.

A Stalking Horse Bid may also take the form of a Credit Bid, including a credit bid by the Consultation Party.

1. Stalking Horse Notice. Within two business days after executing a Stalking Horse Agreement, the Trustee will file with the Court, serve on the Sale Notice Parties (as

defined in Section X.B of the Bidding Procedures) a notice setting forth the material terms of the proposed Stalking Horse Agreement, including (a) the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly-formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) the specific Assets subject to the Stalking Horse Bid; (c) the amount of the Stalking Horse Bid and what portion is cash (the "Stalking Horse Bid Amount"); (d) the terms and conditions of any Termination Payment to be provided under the Stalking Horse Agreement; and (e) the deadline to object to the Stalking Horse Bidder designation and any relevant Termination Payment (each such notice, a "Stalking Horse Notice").

2.  Deadline to Designate Stalking Horse Bidders. Any Stalking Horse Bidder designated by the Trustee in accordance with these Bidding Procedures will be designated by no later than **February 21, 2025, at 4:00 p.m.** (prevailing Eastern Time) (the "Stalking Horse Bidder Designation Deadline"), provided, that, the Trustee may, in his reasonable business judgment, after consulting with the Consultation Party, extend the Stalking Horse Bidder Designation Deadline.

    In the event the Trustee designates a Stalking Horse Bidder after the occurrence of the Stalking Horse Bidder Designation Deadline, but prior to the Auction (as defined in Section VII of the Bidding Procedures), the Trustee may seek Court approval on an expedited basis of such Stalking Horse Bidder and the related Stalking Horse Agreement, including any Termination Payment provided thereunder. The Trustee reserves his right to file such a motion at any time after the Stalking Horse Bidder Designation Deadline and prior to the Auction. Prior to the filing of any such motion, the Trustee will consult with the Consultation Party with respect to the designation of such a Stalking Horse Bidder and Stalking Horse Agreement.

3.  Stalking Horse Hearing. The Trustee will request that the Court schedule a hearing (the "Stalking Horse Hearing") to be held, subject to the Court's availability, on **February 27, 2025**, to consider approval of any applicable Stalking Horse Agreement(s) and the provision of any Termination Payment to be provided thereunder.

4.  Bidding Protection Objections. Any objection to the designation of, or provision of a Termination Payment to, a Stalking Horse Bidder in accordance with Section II of the Bidding Procedures (each such objection, a "Bidding Protection Objection") must (a) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; and (b) be filed with the Court and served on the applicable Objection Notice Parties (as defined in Section X.D. of the Bidding Procedures) within three calendar days after service of the applicable Stalking Horse Notice.

    If the parties are unable to consensually resolve a Bidding Protection Objection, such Bidding Protection Objection will be heard and resolved by the Court at the Stalking Horse Hearing.

5.      <u>Failure to File a Timely Bidding Protection Objection</u>. If no timely Bidding Protection Objection is filed and served in accordance with the Bidding Procedures, the Trustee may file, upon certification of counsel and after consulting with the Consultation Party, a proposed order authorizing and approving the Trustee's entry into the applicable Stalking Horse Agreement and the provision of a Termination Payment thereunder in lieu of holding a Stalking Horse Hearing.

## KEY DATES AND DEADLINES

**A.**      **Bid Deadline**

Any Prospective Bidder, other than a Stalking Horse Bidder, that intends to participate in any Auction must submit in writing to the Bid Notice Parties a Qualified Bid (as defined in Section VI.C of the Bidding Procedures) on or before **February 28, 2025, at 4:00 p.m. (prevailing Eastern Time)**, or such other date as may be agreed to by the Trustee after consulting with the Consultation Party (the "<u>Bid Deadline</u>"). The Trustee shall promptly provide a copy of each bid to each of the Consultation Party, unless a Consultation Party is a bidder for the applicable Asset(s).[3]

The Qualified Bid requirements are set forth in Section VI of the Bidding Procedures.

**B.**      **Auction**

If the Trustee receives one or more Qualified Bids (including a combination of bids that, when considered together, constitute a Qualified Bid) for the Assets, the Trustee will conduct an Auction for such Assets. With respect to Assets for which the Trustee receives only one Qualified Bid by the Bid Deadline, the Trustee may, in his reasonable business judgment, and in consultation with the Consultation Party, determine to consummate a Sale Transaction with the applicable Qualified Bidder or include such Assets in the Auction.

Prior to the commencement of the Auction, the Trustee (in consultation with the Consultation Party) will make a determination regarding the Assets and/or combinations of Assets for which the Trustee will conduct an Auction (each such Asset or group of Assets, an "<u>Auction Package</u>"). The Trustee may determine to include an individual Asset in more than one Auction Package.

The "<u>Auction</u>," if required, will be conducted (i) on **March 7, 2025**, **at 10:00 a.m. (prevailing Eastern Time)** either (a) at the offices of Fox Rothschild LLP, 1201 North Market Street, Suite 1200, Wilmington, DE 19801, or (b) virtually, or (ii) at such other date, time or location as designated by the Trustee, after consulting with the Consultation Party. If the Trustee conducts the Auction virtually, the Trustee will provide instructions setting forth how to attend the Auction to the participants and other attendees via electronic mail. The Trustee will provide notice (via electronic mail or otherwise) of any change in the date, time or location of the Auction to Qualified Bidders and the Consultation Party.

---

[3]      This qualification applies to every instance where the Trustee is required to consult with the Consultation Party in the Bidding Procedures.

The Trustee will file with the Court, serve on the Sale Notice Parties a notice (the "Auction Notice") setting forth (i) the date, time and location of the Auction, (ii) the Assets the Trustee intends to sell at the Auction (each such Asset, an "Asset"); and (iii) the date and time of the Sale Hearing on **March 4, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Auction Notice Deadline").

On **March 10, 2025**, the Trustee will file with the Court and serve on the Sale Notice Parties a notice setting forth the results of the Auction (the "Notice of Auction Results"), which will (i) identify the bidder that submitted the highest or best bid for each Auction Package (each such bidder, a "Successful Bidder" and, each such bid, a "Successful Bid"); (ii) identify the bidder that submitted the next highest or next best bid after the Successful Bid for each Auction Package (each such bidder, a "Backup Bidder" and, each such bid, a "Backup Bid"); (iii) include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bids, including any assumption and assignment of Contracts contemplated thereby; and (iv) set forth the Supplemental Sale Objection Deadline (as defined below) and the date, time and location of the Sale Hearing (as defined below) and any other relevant dates or other information necessary to reasonably apprise parties in interest of the outcome of the Auction.

### C. Objection Deadlines

1.  Sale Objection Deadline. Objections to a sale of the Assets, including (i) any objection to a sale of the Assets free and clear of all liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code and (ii) entry of any Sale Order (each such objection, a "Sale Objection") shall be filed with the Court and served on the Objection Notice Parties (as defined in Section X.D of the Bidding Procedures) by no later than **February 27, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Notice Parties").

2.  Supplemental Sale Objection Deadline. Following service of the Notice of Auction Results, the Sale Notice Parties may object to the conduct of the Auction and/or the particular terms of any proposed Sale Transaction in a Successful Bid (each such objection, a "Supplemental Sale Objection") by **March 12, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Supplemental Sale Objection Deadline").

### D. Sale Hearing

The Sale Hearing (as defined in Section VIII of the Bidding Procedures) shall take place on **March 14, 2025** before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market Street, Wilmington, Delaware 19801.

### RESERVATION OF RIGHTS TO MODIFY BIDDING PROCEDURES

The Trustee reserves the right to, in his reasonable business judgment, in a manner consistent with his fiduciary duties and applicable law, and after consulting with the Consultation Party, modify the Bidding Procedures, including to, among other things, extend or waive deadlines or other terms and conditions set forth therein; adopt new rules and procedures for conducting the

bidding and Auction process so long as any such modifications are disclosed to all Prospective Bidders and Qualified Bidders; if applicable, provide reasonable accommodations to a Stalking Horse Bidder; or otherwise modify the Bidding Procedures to further promote competitive bidding for and maximizing the of value of the Assets, in each case, to the extent not materially inconsistent with the Bidding Procedures and the Bidding Procedures Order.

## ADDITIONAL INFORMATION

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER, OR ANY OTHER APPLICABLE ORDER OF THE COURT ENTERED IN THIS CHAPTER 7 CASE MAY RESULT IN THE REJECTION OF YOUR BID AND YOUR DISQUALIFICATION FROM PARTICIPATING IN THE BIDDING FOR AND AUCTION OF ANY OF THE DEBTOR'S ASSETS.**

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER, INCLUDING THE FAILURE TO FILE ANY SUCH OBJECTION BY THE APPLICABLE OBJECTION DEADLINE, SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING, AT THE SALE HEARING OR THEREAFTER, ANY SUCH OBJECTION TO THE RELIEF REQUESTED IN THE MOTION, THE CONSUMMATION OF ANY APPLICABLE SALE TRANSACTION, INCLUDING THE SALE OF ANY ASSETS TO A SUCCESSFUL BIDDER FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO SECTION 363(f) OF THE BANKRUPTCY CODE OR THE TERMS OF ANY STALKING HORSE AGREEMENT OR OTHER ASSET PURCHASE AGREEMENT EXECUTED BY THE TRUSTEE.**

*[Signature Page to Follow]*

6

**FOX ROTHSCHILD LLP**

By: __/s/ Stephanie Slater Ward__
Stephanie Slater Ward (DE No. 6922)
1201 N. Market Street, Suite 1200
Wilmington, DE 19801
Phone (302) 654-7444/Fax (302) 656-8920
sward@foxrothschild.com

-and-

Michael G. Menkowitz, Esquire
Jesse M. Harris, Esquire
Two Commerce Square
2001 Market Street, Suite 1700
Philadelphia, PA 19103
Phone (215) 299-2000/Fax (215) 299-2150
mmenkowitz@foxrothschild.com
jesseharris@foxrothschild.com

Dated: [•], 2025

*Counsel for Alfred T. Giuliano,*
*Chapter 7 Trustee for the estate of Joriki USA Inc.*

# **Exhibit 3**

| | |
|---|---|
| In re: | Chapter 7 |
| JORIKI USA INC.,[1] | Case No. 25-10034 LSS |
| Debtor. | |

**NOTICE OF AUCTION, SALE HEARING AND
OTHER DEADLINES RELATED THERETO**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On February [•], 2025, Alfred T. Giuliano (the "Trustee"), the Chapter 7 Trustee for the estate of Joriki USA, Inc. (the "Debtor") in the above-captioned chapter 7 case (the "Chapter 7 Case"), filed with the United States Bankruptcy Court for the District of Delaware (the "Court") a motion [Docket No. [•] (the "Motion") seeking entry of (i) an order (the "Bidding Procedures Order") (a) approving bidding procedures (the "Bidding Procedures")[2] to be used in connection with one or more sales (each, a "Sale Transaction") of substantially all of the Debtor's assets (the "Assets"); (b) authorizing the Trustee to enter into one or more asset purchase agreements with one or more "stalking horse" bidders (each such agreement, a "Stalking Horse Agreement" and, each such bidder, a "Stalking Horse Bidder," and the bid of any such Stalking Horse Bidder, a "Stalking Horse Bid") and to provide certain bidding protections, including an expense reimbursement and a break-up fee, to any Stalking Horse Bidder in connection therewith; (c) scheduling an auction of the Assets (the "Auction") and a final hearing to consider approval of any proposed Sale Transactions (the "Sale Hearing"); (d) approving the form and manner of notice of the Bidding Procedures, the Auction, and the Sale Hearing; (e) approving procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "Contracts") in connection with any Sale Transaction; (f) approving the form and manner of notice to each relevant non-debtor counterparty to a Contract of the Trustee's calculation of the amount necessary to cure any defaults under an applicable Contract and certain other information regarding the potential assumption and assignment of Contracts in connection with a Sale Transaction; and (g) granting related relief; and (ii) one or more orders (each, a "Sale Order") (a) authorizing one or more Sale Transactions for a sale of the Assets free and clear of all liens, claims, interests and encumbrances, except certain permitted encumbrances as determined by the Trustee and any Successful Bidder (as defined below) for the applicable Assets, with liens to attach to the proceeds

---

[1] The last four digits of the Debtor's Employer Identification Number are 5175.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or the Bidding Procedures, as applicable. Any summary of the Bidding Procedures or the Bidding Procedures Order (or any provision thereof) contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any inconsistency between any summary in this Sale Notice and the terms and conditions of either of the Bidding Procedures or the Bidding Procedures Order, the actual terms and conditions in those documents shall control.

of the applicable Sale Transaction; (b) authorizing the assumption and assignment of certain Contracts in connection with approved Sale Transactions; and (c) granting related relief.

On [•], 2024, the Court entered the Bidding Procedures Order [Docket No. [•].

## THE AUCTION

The Trustee is seeking to sell all or substantially all of the Debtor's Assets. A Prospective Bidder (as defined in Section IV in the Bidding Procedures) may bid on all or any combination of the Assets, subject to the conditions set forth in the Bidding Procedures.

On February 28, 2025 (the "Bid Deadline"), the Trustee received several Qualified Bids (as defined in Section VI.A of the Bidding Procedures) for the Assets from Qualified Bidders (as defined in Section VI.C of the Bidding Procedures). Pursuant to Section VII of the Bidding Procedures, the Trustee will conduct an auction (the "Auction") (i) on **March 7, 2025, at 10:00 a.m. (prevailing Eastern Time)** either (a) at the offices of Fox Rothschild LLP, 1201 North Market Street, Suite 1200, Wilmington, DE 19801, or (b) virtually, or (ii) at such other date, time or location as designated by the Trustee, after consulting with the Consultation Party (as defined in Section XI of the Bidding Procedures).

On **March 10, 2025**, the Trustee will file with the Court and serve on the Sale Notice Parties a notice setting forth the results of the Auction (the "Notice of Auction Results"), which will (i) identify the bidder that submitted the highest or best bid for each Auction Package (each such bidder, a "Successful Bidder" and, each such bid, a "Successful Bid"); (ii) identify the bidder that submitted the next highest or next best bid after the Successful Bid for each Auction Package (each such bidder, a "Backup Bidder" and, each such bid, a "Backup Bid"); (iii) include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bids, including any assumption and assignment of Contracts contemplated thereby; and (iv) set forth the Supplemental Sale Objection Deadline (as defined below) and the date, time and location of the Sale Hearing (as defined below) and any other relevant dates or other information necessary to reasonably apprise parties in interest of the outcome of the Auction.

Following service of the Notice of Auction Results, Sale Notice Parties may object to the conduct of the Auction and/or the particular terms of any proposed Sale Transaction in a Successful Bid (each such objection, a "Supplemental Sale Objection") by **March 12, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Supplemental Sale Objection Deadline").

## THE SALE HEARING

The Sale Hearing (as defined in Section VIII of the Bidding Procedures) shall take place on **March 14, 2025**, before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market Street, Wilmington, Delaware 19801.

## ADDITIONAL INFORMATION

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER, OR ANY OTHER APPLICABLE ORDER OF THE COURT**

ENTERED IN THIS CHAPTER 7 CASE MAY RESULT IN THE REJECTION OF YOUR BID AND YOUR DISQUALIFICATION FROM PARTICIPATING IN THE BIDDING FOR AND AUCTION OF ANY OF THE DEBTOR'S ASSETS.

THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER, INCLUDING THE FAILURE TO FILE ANY SUCH OBJECTION BY THE APPLICABLE OBJECTION DEADLINE, SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING, AT THE SALE HEARING OR THEREAFTER, ANY SUCH OBJECTION TO THE RELIEF REQUESTED IN THE MOTION, THE CONSUMMATION OF ANY APPLICABLE SALE TRANSACTION, INCLUDING THE SALE OF ANY ASSETS TO A SUCCESSFUL BIDDER FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO SECTION 363(f) OF THE BANKRUPTCY CODE OR THE TERMS OF ANY STALKING HORSE AGREEMENT OR OTHER ASSET PURCHASE AGREEMENT EXECUTED BY THE TRUSTEE.

**FOX ROTHSCHILD LLP**

By:  /s/ Stephanie Slater Ward
Stephanie Slater Ward (DE No. 6922)
1201 N. Market Street, Suite 1200
Wilmington, DE 19801
Phone (302) 654-7444/Fax (302) 656-8920
sward@foxrothschild.com

-and-

Michael G. Menkowitz, Esquire
Jesse M. Harris, Esquire
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Phone (215) 299-2000/Fax (215) 299-2150
mmenkowitz@foxrothschild.com
jesseharris@foxrothschild.com

Dated: [•], 2025

*Counsel for Alfred T. Giuliano,*
*Chapter 7 Trustee for the estate of Joriki USA Inc.*

# **Exhibit 4**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 7 |
| JORIKI USA INC.,[1] | Case No. 25-10034 LSS |
| | (Joint Administration Requested) |
| Debtor. | |

**NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION**
**AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED**
**LEASES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL ASSETS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On February [•], 2025, Alfred T. Giuliano (the "Trustee"), the Chapter 7 Trustee for the estate of Joriki USA, Inc. (the "Debtor") in the above-captioned chapter 7 case (the "Chapter 7 Case"), filed with the United States Bankruptcy Court for the District of Delaware (the "Court") a motion [Docket No. •] (the "Motion") seeking entry of (i) an order (the "Bidding Procedures Order") (a) approving bidding procedures (the "Bidding Procedures")[2] to be used in connection with one or more sales (each, a "Sale Transaction") of substantially all of the Debtor's assets (the "Assets"); (b) authorizing the Trustee to enter into one or more asset purchase agreements with one or more "stalking horse" bidders and to provide certain bidding protections in connection therewith; (c) scheduling an auction of the Assets (the "Auction") and a final hearing to consider approval of any proposed Sale Transactions (the "Sale Hearing"); (d) approving the form and manner of notice of the Bidding Procedures, the Auction, and the Sale Hearing; (e) approving procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "Contracts") in connection with any Sale Transaction (the "Assumption and Assignment Procedures"); (f) approving the form and manner of notice to each relevant non-debtor counterparty to a Contract (each, a "Counterparty") of the Trustee's calculation of the amount necessary to cure any defaults under an applicable Contract (the "Cure Costs") and certain other information regarding the potential assumption and assignment of Contracts in connection with a Sale Transaction; and (g) granting related relief; and (ii) the form of sale order (a "Sale Order") (a) authorizing one or more Sale Transactions for a sale of the Assets free and clear of all liens, claims, interests and encumbrances, except certain permitted encumbrances as determined by the Trustee and any Successful Bidder (as defined in Section VII.C.1 of the Bidding Procedures) for the applicable Assets, with liens to attach to the proceeds of the applicable Sale Transaction;

---

[1]     The last four digits of the Debtor's Employer Identification Number are 5175.

[2]     Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or the Bidding Procedures, as applicable. Any summary of the Bidding Procedures or the Bidding Procedures Order (or any provision thereof) contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any inconsistency between any summary in this Notice and the terms and conditions of either of the Bidding Procedures or the Bidding Procedures Order, the actual terms and conditions in those documents shall control.

(b) authorizing the assumption and assignment of certain Contracts in connection with approved Sale Transactions; and (c) granting related relief.

On [•], 2025, the Court entered the Bidding Procedures Order [Docket No. [•].

**You are receiving this Notice because you may be a Counterparty to a Contract of the Debtor's that may be assumed and assigned to a Successful Bidder for the Debtor's Assets.**

## CURE COSTS

In accordance with the Assumption and Assignment Procedures and the Bidding Procedures Order, the Trustee may, in connection with one or more Sale Transactions with a Successful Bidder at the applicable Auction, seek to assume and assign to the Successful Bidder certain of the Debtor's Contracts. Each of the Contracts that potentially could be assumed and assigned in connection with a Sale Transaction, together with the Trustee's calculation of Cure Costs with respect to such Contracts, is set forth on **Schedule 1** hereto. The inclusion of any Contract on **Schedule 1** does not constitute an admission by the Trustee or any other party that such Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code or require or guarantee that such Contract ultimately will be assumed or assigned. All rights of the Trustee with respect thereto are reserved.

## CURE OBJECTIONS

### A. Cure Objection Deadline

Any Counterparty that wishes to object to the Trustee's proposed Cure Costs (each such objection, a "Cure Objection") must file with the Court and serve on the Objection Notice Parties (as defined in Section X.D of the Bidding Procedures) its Cure Objection, which must be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof, by no later than **February 27, 2025, at 4:00 p.m. (prevailing Eastern Time).**

### B. Resolution of Cure Objections

Pursuant to the Bidding Procedures Order, the Trustee (in consultation with the Consultation Party) and the objecting Counterparty must first confer in good faith to attempt to resolve the Cure Objection without Court intervention. If the parties are unable to consensually resolve the Cure Objection prior to the commencement of the Sale Hearing, the Court shall make all necessary determinations relating to the applicable Cure Costs and Cure Objection at a hearing scheduled pursuant to the following paragraph. If a Cure Objection is resolved in a manner that is not in the best interests of the Trustee, the Debtor, and its estate, whether or not such resolution occurs prior to or after the closing of the applicable Sale Transaction, the Trustee may determine that any Contract subject to such resolved Cure Objection no longer will be assumed and assigned; provided, that, in the case of an unexpired lease of non-residential real property, such determination shall be made prior to the expiration of the applicable deadline to assume or reject unexpired leases under section 365(d)(4) of the Bankruptcy Code. All other objections to the Trustee's proposed assumption and assignment of the Debtor's right, title and interest in, to and under a Contract shall be heard at the Sale Hearing.

## C.      Adjourned Cure Objections

If a timely filed Cure Objection cannot otherwise be resolved by the parties, the Cure Objection may be heard at the Sale Hearing, or, at the option of the Trustee, in consultation with the Consultation Party (as defined in Section XI of the Bidding Procedures), be adjourned to a subsequent hearing (each such Cure Objection, an "Adjourned Cure Objection"). An Adjourned Cure Objection may be resolved after the closing date of the applicable Sale Transaction. Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the applicable Contract that was the subject of such Adjourned Cure Objection shall (as applicable) be deemed assumed and assigned to the applicable Successful Bidder as of the closing date of the applicable Sale Transaction.

**IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY CURE OBJECTION, THE COUNTERPARTY FOREVER SHALL BE BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO THE COST TO CURE ANY DEFAULTS UNDER THE APPLICABLE CONTRACT. THE CURE COSTS SET FORTH ON SCHEDULE 1 HERETO SHALL BE CONTROLLING AND WILL BE THE ONLY AMOUNT NECESSARY TO CURE OUTSTANDING DEFAULTS UNDER THE CONTRACT AND SATISFY THE REQUIREMENTS OF SECTION 365(b) OF THE BANKRUPTCY CODE, AND THE COUNTERPARTY TO THE CONTRACT SHALL BE DEEMED BOUND BY AND TO HAVE CONSENTED TO THE CURE COSTS.**

## NOTICE OF AUCTION RESULTS

The "Auction," if required, will be conducted (i) on **March 7, 2025** either (a) at the offices of Fox Rothschild LLP, 1201 North Market Street, Suite 1200, Wilmington, DE 19801, or (b) virtually, or (ii) at such other date, time or location as designated by the Trustee, after consulting with the Consultation Party. If the Trustee conducts the Auction virtually, the Trustee will provide instructions setting forth how to attend the Auction to the participants and other attendees via electronic mail. The Trustee will provide notice (via electronic mail or otherwise) of any change in the date, time, or location of the Auction to Qualified Bidders and the Consultation Party.

The Trustee will file with the Court and serve on the Sale Notice Parties a notice (the "Auction Notice") setting forth (i) the date, time and location of the Auction, (ii) the Assets the Trustee intends to sell at the Auction; and (iii) the date and time of the Sale Hearing on **March 4, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Auction Notice Deadline").

On **March 10, 2025**, the Trustee will file with the Court and serve on the Sale Notice Parties (as defined in Section X.B of the Bidding Procedures) a notice setting forth the results of the Auction (the "Notice of Auction Results"), which will (i) identify the bidder that submitted the highest or best bid for each Auction Package (as defined in Section VII.B.1 of the Bidding Procedures) (each such bidder, a "Successful Bidder" and, each such bid, a "Successful Bid"); (ii) identify the bidder that submitted the next highest or next best bid after the Successful Bid for each Auction Package (each such bidder, a "Backup Bidder" and, each such bid, a "Backup Bid"); (iii) include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bids, including any assumption and assignment of Contracts contemplated thereby; and

(iv) set forth the Supplemental Sale Objection Deadline (as defined Section X.D of the Bidding Procedures) and the date, time and location of the Sale Hearing (as defined in Section VIII of the Bidding Procedures) and any other relevant dates or other information necessary to reasonably apprise parties in interest of the outcome of the Auction.

## ADEQUATE ASSURANCE OBJECTIONS

1    <u>Adequate Assurance Objection Deadline</u>. Any Counterparty to a Contract proposed to be assumed by and assigned to a Successful Bidder at the Auction that wishes to object to the proposed assumption and assignment of the Contract, the subject of which objection is such Successful Bidder's proposed form of adequate assurance of future performance (each such objection, an "<u>Adequate Assurance Objection</u>"), must file with the Court and serve on the Objection Notice Parties an Adequate Assurance Objection, which must state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof, by **March 12, 2025, at 4:00 p.m. (prevailing Eastern Time)**, (the "<u>Adequate Assurance Objection Deadline</u>").

2    <u>Resolution of Adequate Assurance Objections</u>. Pursuant to the Bidding Procedures Order, the Trustee and the objecting Counterparty must first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention. If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, the Adequate Assurance Objection and all issues of adequate assurance of future performance of the Successful Bidder (or any other relevant assignee) shall be determined by the Court at the Sale Hearing.

**IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY ADEQUATE ASSURANCE OBJECTION, THE COUNTERPARTY FOREVER SHALL BE BARRED FROM ASSERTING ANY OBJECTION TO THE ASSUMPTION AND/OR ASSIGNMENT OF THE APPLICABLE CONTRACT WITH REGARD TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE. THE APPLICABLE SUCCESSFUL BIDDER SHALL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE CONTRACT IN ACCORDANCE WITH BANKRUPTCY CODE SECTIONS 365(b)(1)(C), 365(f)(2)(B) AND, IF APPLICABLE, 365(b)(3), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE CONTRACT OR ANY OTHER DOCUMENT.**

## SALE HEARING

The Sale Hearing shall take place on **March 14, 2025**, before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market Street, Wilmington, Delaware 19801.

**FOX ROTHSCHILD LLP**

By: _/s/ Stephanie Slater Ward_
Stephanie Slater Ward (DE No. 6922)
1201 N. Market Street, Suite 1200
Wilmington, DE 19801
Phone (302) 654-7444/Fax (302) 656-8920
sward@foxrothschild.com

-and-

Michael G. Menkowitz, Esquire
Jesse M. Harris, Esquire
2000 Market Street, 20th Floor
Philadelphia, PA  19103-3222
Phone (215) 299-2000/Fax (215) 299-2150
mmenkowitz@foxrothschild.com
jesseharris@foxrothschild.com

Dated: [•], 2025

*Counsel for Alfred T. Giuliano,*
*Chapter 7 Trustee for the estate of Joriki USA Inc.*

**<u>Schedule 1</u>**