# Exhibit "B"

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| JORIKI USA INC.,[1] | Case No. 25-10034 LSS |
| Debtor. | Re: D.I. _____ |

## ORDER (I) APPROVING THE SALE OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (III) GRANTING RELATED RELIEF

This matter coming before the Court on the *Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtor's Assets, (B) Authorizing the Trustee to Enter into One or More Stalking Horse Purchase Agreements and to Provide Bidding Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; and (II)(A) Approving the Sale of the Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* (the "Sale Motion") [Docket No. ●],[2] filed by Alfred T. Giuliano (the "Trustee"), the Chapter 7 trustee for the estate of Joriki USA Inc. (the "Debtor"), in the above-captioned chapter 7 case (the "Chapter 7 Case"), and upon the *Order (I) Approving Bidding Procedures for the Sale of Substantially of the Debtor's Assets, (II) Authorizing the Debtor to Enter into One or More Stalking Horse Agreements and to Provide Bidding*

---

[1] The last four digits of the Debtor's Employer Identification Number are 5175.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Sale Motion or the Asset Purchase Agreement (as hereinafter defined), as applicable.

*Protections Thereunder, (III) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (IV) Approving Assumption and Assignment Procedures, (V) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (VI) Granting Related Relief* [Docket No. ●] (the "<u>Bidding Procedures Order</u>"); and that certain [_____], dated as of__, 2025 (the "<u>Asset Purchase Agreement</u>"), by and among the Trustee and [_____] (the "<u>Buyer</u>"), a copy of which is attached hereto as **Exhibit 1**, by which the Buyer submitted the highest or best bid for the Purchased Assets (as defined in the Asset Purchase Agreement); and the Court having conducted a hearing to consider certain relief requested in the Sale Motion on March 14, 2025 (the "<u>Sale Hearing</u>"), at which time all interested parties were offered an opportunity to be heard with respect to the Sale Motion; and the Court having reviewed and considered (i) the Sale Motion; (ii) the Asset Purchase Agreement; (iii) the Bidding Procedures Order and the record of the hearing before the Court on [DATE], 2025, after which hearing the Bidding Procedures Order was entered; and (iv) the arguments of counsel made, and the evidence proffered or adduced, at the Bidding Procedures Hearing or the Sale Hearing; and after due deliberation the Court having determined that the legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Sale Motion is in the best interest of the Debtor, its estate, and its creditors, and the Trustee having demonstrated good, sufficient and sound business justifications for the relief granted herein;

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

---

[3] The findings and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. The Court's findings also shall include any oral findings of fact and conclusions of law made by the Court during the Sale Hearing.

A.  Jurisdiction and Venue.  This Court has jurisdiction to consider the Sale Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1134 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.  Final Order. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

C.  Statutory Predicates.  The statutory and other legal predicates for the relief sought in the Sale Motion and granted herein are sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, and 9014 of the Bankruptcy Rules; and Rules 2002-1, 6004-1, and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

D.  Notice and Opportunity to Be Heard. As evidenced with the certificates of service filed with the Court [Docket Nos. ●], the Trustee has provided proper, timely, adequate, and sufficient notice of, and a fair and reasonable opportunity to object and be heard with respect to, the Sale Motion, the Bidding Procedures, the Auction, the Sale Hearing, the sale of the Purchased Assets pursuant to the Asset Purchase Agreement (the "Sale Transaction") free and clear of any Liens within the meaning of section 363(f) of the Bankruptcy Code, the Notice of Auction Results [Docket No. ●], the Assumption and Assignment Notice [Docket No. ●] and the assumption and assignment of the executory contracts and unexpired leases to be assumed and assigned to Buyer at Closing (as defined in the Asset Purchase Agreement) pursuant to this Order and the terms of the Asset Purchase Agreement (collectively, the "Contracts"), in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code; Bankruptcy Rules 2002, 4001, 6004, 6006, 9007 and 9014;

Local Rules 2002-1, 6004-1 and 9006-1; and the Bidding Procedures Order, to all persons and entities entitled to such notice, including the Sale Notice Parties (as defined in the Bidding Procedures) and all other persons and entities as directed by the Court. Such notice was good, sufficient, and appropriate under the circumstances, and no other or further notice of any of the foregoing is required.

E.    <u>Disclosures</u>. The disclosures made by the Trustee in the Sale Motion, the Sale Notice, the Assumption and Assignment Notice, the Notice of Auction Results, and all other related notices and documents filed with the Court concerning the Asset Purchase Agreement and Sale Transaction were complete and adequate.

F.    <u>Sound Business Purpose</u>. The Trustee has demonstrated good, sufficient, and sound business purposes and justifications for approval of the Sale Motion and the approval of and entry into the Sale Transaction, the Asset Purchase Agreement, and any ancillary agreements thereto (i) are a result of due deliberation by the Trustee and constitute a sound and reasonable exercise of the Trustee's business judgment consistent with his fiduciary duties; (ii) provide value and are beneficial to the Debtor's estate, and is in the best interests of the Debtor, its estate, and its stakeholders; and (iii) are reasonable and appropriate under the circumstances. Business justifications for entry into the Sale Transaction and the Asset Purchase Agreement include, but are not limited to, (A) the Asset Purchase Agreement constitutes the highest or best offer received for the Purchased Assets; (B) the Asset Purchase Agreement presents the best opportunity to maximize the value of the Purchased Assets on a going-concern basis and to avoid decline and devaluation as a result of delay or liquidation; (C) failure to consummate the Sale Transaction expeditiously, as provided under the Asset Purchase Agreement, could materially diminish creditor

recoveries; and (D) the immediate consummation of the Sale Transaction is necessary to maximize the value of the Debtor's estate.

G. <u>Compliance with Bidding Procedures</u>. The Trustee conducted an open and fair Sale Process. The Sale Process was non-collusive in all respects, and all interested parties were provided a full, fair, and reasonable opportunity to make an offer to purchase the Purchased Assets. The Trustee, the Buyer, and their respective counsel and other advisors have complied with the Bidding Procedures and the Bidding Procedures Order in all respects.

H. <u>Highest or Best Value</u>. The Trustee determined, in his reasonable business judgment, in a manner consistent with his fiduciary duties and in consultation with the Consultation Party, that the Buyer's Qualified Bid, as documented in the Asset Purchase Agreement, was the highest or otherwise best Qualified Bid for the Purchased Assets. Consummating the Sale Transaction will yield greater value to the Debtor's estate than would have been provided by any other available alternative transaction.

I. <u>Fair Consideration</u>. The consideration to be paid by the Buyer under the Asset Purchase Agreement constitutes (i) fair and reasonable consideration for the Purchased Assets; and (ii) reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act and other laws of the United States, any state, territory, possession thereof or the District of Columbia.

J. <u>Free and Clear Sale</u>. The Trustee may sell the Purchased Assets free and clear of all Liens (unless otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Any holders of Liens that objected to the

Sale Transaction or the Sale Motion and that have a Lien on the Purchased Assets could be compelled in a legal or equitable proceeding to accept money in satisfaction of such Lien pursuant to section 363(f)(5), or fall within one or more of the other subsections of section 363(f) and, therefore, are adequately protected by having their Liens on the Purchased Assets attach solely to the proceeds of the Sale Transaction ultimately attributable to the sale of the property in which such holders have a Lien, in the same order of priority, and with the same validity, force and effect that such Liens had prior to the consummation of the Sale Transaction, subject to any rights, claims or defenses of the Trustee, the Debtor, and its estate. Any Lien holders that did not object, or that withdrew their objections, to the Sale Motion or the Sale Transaction, are deemed to have consented to the sale of the Purchased Assets free and clear of their respective Liens on the Purchased Assets pursuant to section 363(f)(2) of the Bankruptcy Code.

K. <u>Buyer's Reliance on Free and Clear Sale</u>. The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction or the other transactions contemplated thereby if the sale of the Purchased Assets were not free and clear of all Liens, or if the Buyer would, or in the future could, be liable for any such Liens. A sale of the Purchased Assets other than one free and clear of all Liens would adversely impact the Debtor, its estate, and its creditors, and would yield substantially less value for the Purchased Assets and the Debtor's estate, with less certainty than provided by the Sale Transaction. The total consideration to be provided under the Asset Purchase Agreement reflects the Buyer's reliance on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Purchased Assets free and clear of all Liens, including, without limitation, any potential derivative, vicarious, transferee, or successor liability Liens.

L.      <u>No Successor or Other Derivative Liability</u>. By consummating the Sale Transaction pursuant to the Asset Purchase Agreement, the Buyer is not a mere continuation of the Debtor or the Debtor's estate, and there is no continuity of enterprise or otherwise or common identity between the Buyer and the Debtor. The Buyer is not holding itself out as a continuation of the Debtor. The Buyer is not a successor to the Debtor or the Debtor's estate by reason of any theory of law or equity, and the Sale Transaction does not amount to a consolidation, merger, or de facto merger of the Buyer and the Debtor or its estate.  Neither the Buyer nor any of its affiliates or their respective successors, assigns, members, partners, principals or shareholders (or the equivalent thereof) shall assume or in any way be responsible for any obligation or liability of the Debtor (or any affiliate of the Debtor) or the Debtor's estate, except as expressly provided in the Asset Purchase Agreement. The sale and transfer of the Purchased Assets to the Buyer, including the assumption by the Debtor and assignment, transfer, and/or sale to the Buyer of any of the Contracts, will not subject the Buyer to any liability with respect to the operation of the Debtor's business prior to the Closing or by reason of such transfer, except that, upon the Closing, the Buyer shall remain liable for the applicable Assumed Liabilities (as defined in the Asset Purchase Agreement).

M.      <u>Good Faith</u>.  The Trustee, the Buyer, and their respective counsel and other advisors have negotiated and entered into the Asset Purchase Agreement and each of the transactions contemplated thereby in good faith, without collusion and from arms'-length bargaining positions. The Buyer is a good-faith purchaser and is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. The Trustee was free to deal with any other party interested in acquiring all or some of the Purchased Assets. Neither the Trustee nor the Buyer have engaged in any conduct that would cause

or permit the Sale Transaction, the Asset Purchase Agreement, or any of the transactions contemplated thereby to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code, or that would prevent the application of sections 363(m) or 364(e) of the Bankruptcy Code. The Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction. Specifically, the Buyer has not acted in a collusive manner with any person or entity, and the Buyer's participation in and bidding at the Auction were not controlled by any agreement among bidders. All payments to be made by the Buyer and all agreements entered into by the Buyer and the Trustee under the Asset Purchase Agreement in connection with the Sale Transaction have been disclosed and are appropriate. The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under laws of the United States, any state, territory, possession or the District of Columbia.

N.     Insider Status. The Buyer is not an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. No common identity of directors or controlling stockholders (or the equivalent thereof) exists between the Buyer and the Debtor.

O.     Assumption and Assignment of Contracts. The assumption and assignment of the Contracts are an integral part of the Sale Transaction, are in the best interests of the Debtor and its estate and represent the valid and reasonable exercise of the Trustee's sound business judgment. Specifically, the assumption and assignment of the Contracts (i) are necessary to sell the Purchased Assets to the Buyer as contemplated by the Asset Purchase Agreement, (ii) allow the Trustee to sell the Purchased Assets to the Buyer as a going concern, (iii) limit the losses suffered by the Counterparties to the Contracts, and (iv) maximize the recoveries of other creditors of the Debtor by avoiding claims against the Debtor's estate that would arise from the Debtor's rejection of the Contracts.  Any Counterparty to any Contract that has not actually filed with the Court and served

on the Objection Notice Parties (as defined in the Bidding Procedures) an objection to the assumption and/or assignment of such Contract as of the applicable date specified in the Bidding Procedures Order (as such date may have been modified or extended in accordance with the terms of the Bidding Procedures Order) is deemed to have consented to the assumption and assignment of the Contract.

P.    <u>Compliance with Section 365 of the Bankruptcy Code</u>.  The Trustee has met all requirements of section 365(b) of the Bankruptcy Code with respect to the assumption and assignment of each of the Contracts. The Trustee has provided adequate assurance (within the meaning of section 365(b)(1) of the Bankruptcy Code) of cure of any default existing under any of the Contracts on or before the Closing Date (as defined in the Asset Purchase Agreement). The Buyer has demonstrated adequate assurance of future performance of and under the Contracts within the meaning of sections 365(b)(1)(C), 365(f)(2)(B), and 365(b)(3) (to the extent applicable) of the Bankruptcy Code. Pursuant to section 365(f) of the Bankruptcy Code, the Contracts shall be assigned and transferred to and remain in full force and effect for the benefit of the Buyer, notwithstanding any provision in the Contracts or other restrictions prohibiting their assignment or transfer.

Q.    <u>Property of the Estate</u>.  The Purchased Assets constitute property of the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code.

R.    <u>Validity of the Sale Transaction</u>.  The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f), and all of the applicable requirements of such sections have been complied with in all respects in connection with the Sale Transaction. As of the Closing, the transfer of the Purchased Assets to the Buyer will be a legal,

valid, and effective transfer of the Purchased Assets, including the assigned Contracts, and will vest the Buyer with all right, title, and interest of the Debtor in and to the Purchased Assets free and clear of all Liens. The Trustee has full authority to execute the Asset Purchase Agreement and all other documents contemplated thereby. Upon entry of this Order, other than any consents identified in the Asset Purchase Agreement, no consent or approval from any other person, entity, or legal authority is required to consummate the Sale Transaction.

S.     No Stay of Order.   Time is of the essence to implement the Asset Purchase Agreement and consummate the Sale Transaction. The Sale Transaction must be approved and consummated promptly in order to preserve the value of the Purchased Assets and to ensure the Trustee's compliance with his obligations under the post-petition financing agreements. The Trustee has demonstrated compelling circumstances and sound business justifications for the immediate approval and consummation of the Sale Transaction as contemplated by the Asset Purchase Agreement. Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), 7062 or any applicable provisions of the Local Rules, this Order shall not be stayed and shall be effective and enforceable immediately upon entry.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.     Sale Motion Granted.   The Sale Motion and the relief requested therein (to the extent not previously granted by the Court pursuant to the Bidding Procedures Order or otherwise) are GRANTED and approved as set forth herein.

2.     Objections Overruled.   Any objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are hereby overruled on the merits with prejudice.

3.      Sale Transaction Approved.  The Asset Purchase Agreement and all transactions contemplated thereby are APPROVED.

4.      Trustee's Performance Authorized.  The Trustee is hereby authorized to enter into and perform his obligations under the Asset Purchase Agreement, and to take such other actions as may be necessary or desirable to effectuate the terms of the Asset Purchase Agreement and other instruments or documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Asset Purchase Agreement, the Sale Transaction, or this Order, including, without limitation, deeds, assignments, stock powers, transfers of membership interests and any other instruments of transfer, without further order of the Court. The Trustee is hereby further authorized to take all other actions as may reasonably be requested by the Buyer or otherwise for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer, or reducing to the Buyer's possession any or all of the Purchased Assets, including the Contracts, as may be necessary or appropriate for the Trustee to perform his obligations under the Asset Purchase Agreement and consummate the Sale Transaction, without further order of the Court.

5.      The Trustee is hereby authorized and empowered to cause to be executed and filed such statements, instruments, releases, and other documents with respect to the Purchased Assets that are necessary or appropriate to effectuate the Asset Purchase Agreement, the Sale Transaction or this Order, including, as applicable, amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units.

6. <u>Valid Transfer</u>. Effective as of the Closing Date, the sale and assignment of the Purchased Assets and the Contracts by the Trustee to the Buyer shall constitute a legal, valid, and effective transfer of the Purchased Assets and the Contracts, notwithstanding any requirement for approval or consent by any person, and will vest the Buyer with all right, title, and interest of the Debtor in and to the Purchased Assets and the Contracts, free and clear of all Liens (unless otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement), pursuant to section 363(f) of the Bankruptcy Code.

7. <u>Free and Clear Sale</u>. Except to the extent specifically provided in the Asset Purchase Agreement, upon the Closing Date, the Trustee shall be, and hereby is, authorized and empowered, pursuant to sections 105, 363(b), and 363(f) of the Bankruptcy Code, to sell and transfer to the Buyer the Purchased Assets. The sale and transfer of the Purchased Assets to the Buyer shall vest the Buyer with all right, title, and interest of the Debtor in and to the Purchased Assets free and clear of any and all Liens of any person or entity, with all such Liens to attach to the net proceeds of the Sale Transaction ultimately attributable to the sale of the property in which such holders have a Lien, in the same order of priority, and with the same validity, force, and effect that such Liens had prior to the consummation of the Sale Transaction, subject to any rights, claims or defenses of the Trustee, the Debtor, or its estate. Following the Closing, no holder of any Lien on any of the Purchased Assets shall interfere with the Buyer's use or enjoyment of any of the Purchased Assets based on or related to such Lien or any actions that the Trustee has taken or may take in this Chapter 7 Case.

8. The provisions of this Order authorizing the sale and transfer of the Purchased Assets free and clear of Liens shall be self-executing, and neither the Trustee nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other

instruments in order to effectuate, consummate or implement the provisions of this Order. For the avoidance of doubt, on or after the Closing Date, the Trustee and/or the Buyer shall be authorized, but not directed, to file any such releases, termination statements, assignments, consents, or other instruments in any jurisdiction to record the release, discharge, and termination of Liens on the Purchased Assets pursuant to the terms of this Order.

9. <u>Direction to Creditors</u>. This Order shall be (a) effective as a determination that, as of the Closing Date, all Liens on the Purchased Assets (unless otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement) shall be unconditionally released, discharged and terminated as to the Buyer and the Purchased Assets; and (b) binding upon all persons and entities, including all the Debtor's creditors and any holder of a Lien in any of the Purchased Assets, and all such persons and entities are hereby authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release their respective Liens on the Purchased Assets, if any. If any person or entity that has filed a financing statement, mortgage, mechanics lien, lis pendens, or other document, instrument, notice, or agreement evidencing any Lien on the Purchased Assets has not delivered to the Trustee on or before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, releases, or instruments of satisfaction that the person or entity has with respect to the Purchased Assets, the Trustee and/or the Buyer are authorized to (x) execute and file such termination statements, releases, instruments of satisfaction, or other documents with respect to the Purchased Assets on behalf of the applicable person or entity; and (y) file, register, or otherwise record a certified copy of this Order which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens on the Purchased Assets. This Order is

deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, local, tribal, or foreign government agency, department, or office.

10. <u>Direction to Recording Officers</u>. This Order shall be binding upon all persons and entities, including filing agents or officers, title agents or companies, recorders of mortgages or deeds, registrars, administrative agencies, governmental units or departments, secretaries of state, governmental officials, and all other persons or entities that may be required by operation of law, the duties of their office or contract to accept, file, register, or otherwise record or release any documents or instruments regarding the Purchased Assets or who may be required to report or insure any title or state of title in or to the Purchased Assets, (collectively, the "<u>Recording Officers</u>"). All Recording Officers are hereby authorized and directed to (a) accept any and all documents or instruments necessary and appropriate to consummate the Sale Transaction or to record and reflect that the Buyer is the owner of the Purchased Assets free and clear of all Liens (unless otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement) and (b) strike all recorded Liens on the Purchased Assets from their records.

11. <u>Direction to Surrender the Purchased Assets</u>. All persons or entities in possession or control of any of the Purchased Assets, either presently or on or before the Closing Date, are directed to surrender possession or control of the Purchased Assets to the Buyer on the Closing Date.

12. <u>No Successor Liability</u>. The Buyer and its affiliates, and their respective predecessors, successors, assigns, members, partners, officers, directors, principals, and shareholders (or the equivalent thereof) are not and shall not be (a) deemed a "successor" in any respect to the Debtor or its estate as a result of the consummation of the Sale Transaction or any other event occurring in the Debtor's Chapter 7 Case under any theory of law or equity; (b) deemed

to have, de facto or otherwise, merged or consolidated with, or into the Debtor or its estate; (c) deemed to be an alter ego of or have a common identity with the Debtor; (d) deemed to have a continuity of enterprise with the Debtor; or (e) deemed to be a continuation or substantial continuation of the Debtor or any enterprise of the Debtor, including (with respect to clauses (a) through (e) of this paragraph) within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, products liability, or other law, doctrine, rule, or regulation (including any filing requirements under any such laws, rules or regulations) with respect to the Debtor's liability under such law, doctrine, rule or regulation.

13. The Buyer shall not assume, nor be deemed to have assumed or in any way be responsible for, any liability or obligation of the Debtor or its estate including, but not limited to, any Excluded Liabilities, any bulk sales law, successor, or vicarious liability, liability or responsibility for any claim against the Debtor or against any insider of the Debtor or similar liability, except as otherwise expressly provided in the Asset Purchase Agreement, the Sale Motion, Sale Notice, and Notice of Auction Results, which contain sufficient notice of such limitation in accordance with applicable law. Except for the Assumed Liabilities, the transfer of the Purchased Assets and the Contracts to the Buyer under the Asset Purchase Agreement shall not result in (a) the Buyer, its affiliates, or any of their respective predecessors, successors, assigns, members, partners, officers, directors, principals, or shareholders (or the equivalent thereof), or any of the Purchased Assets having any liability or responsibility for any claim against the Debtor or against any insider of the Debtor (including, without limitation, Excluded Liabilities); (b) the Buyer, its affiliates, or any of their respective predecessors, successors, assigns, members, partners, officers, directors, principals, or shareholders (or the equivalent thereof), or any of the Purchased Assets having any liability whatsoever with respect to, or being required to satisfy in any manner,

whether at law or in equity, whether by payment, setoff, or otherwise, directly or indirectly, any Liens or Excluded Liabilities; or (c) the Buyer, its affiliates, or any of their respective predecessors, successors, assigns, members, partners, officers, directors, principals, or shareholders (or the equivalent thereof), or any of the Purchased Assets having any liability or responsibility to the Debtor, except as is expressly set forth in the Asset Purchase Agreement.

14.     Effective upon the Closing Date, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Buyer, its assets (including the Purchased Assets), or its successors or assigns, with respect to any (a) Lien on the Purchased Assets or (b) successor, transferee, vicarious or other similar liability or theory of liability, including (i) commencing or continuing any action or other proceeding pending or threatened, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of the Court or the agreements or actions contemplated or taken in respect hereof or thereof; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien; (iv) asserting any setoff, right of subrogation, or recoupment of any kind; or (v) revoking, terminating, or failing or refusing to renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

15.     Assumption and Assignment of Contracts. Under sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Sale Transaction, the Trustee's assumption and assignment of the Contracts to the Buyer free and clear of all Liens pursuant to the terms of the Asset Purchase Agreement, as modified by the terms of any amendments reached by the Buyer and the respective Counterparty, is hereby approved, and the

requirements of sections 365(b)(1), 365(f)(2), and 365(b)(3) (to the extent applicable) of the Bankruptcy Code with respect thereto are hereby deemed satisfied. Upon the Trustee's assumption and assignment of the Contracts to the Buyer, each applicable Counterparty shall be forever barred, estopped, and permanently enjoined from raising or asserting against the Debtor, the Trustee, the Buyer, or their respective property, any assignment fee, default, breach, claim, pecuniary loss, liability, or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, known or unknown, liquidated or unliquidated senior or subordinate) arising under or out of, in connection with or in any way related to, the Contracts existing as of the Closing Date or arising by reason of the Closing. Upon the Trustee's assumption and assignment of the Contracts to the Buyer, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtor in and to the Contracts and, pursuant to section 365(k) of the Bankruptcy Code, the Trustee shall be relieved from any further liability with respect to the Contracts. The Trustee's assumption and assignment of the Contracts to the Buyer shall not constitute a default under or a termination of any Contract.

16.     Cure Obligations. Any defaults or other obligations under the Contracts shall be deemed cured by the Trustee's, or the Buyer's (as applicable), payment or other satisfaction of the cure amounts, if any, associated with the Contracts (the "Cure Costs").

17.     Cure Objections. Except as provided herein, all objections to the Trustee's calculation of Cure Costs with respect to any of the Contracts (each such objection, a "Cure Objection") have been overruled, withdrawn, waived, settled, or otherwise resolved. Any Cure Objections as to applicable Cure Costs that have not been resolved by the parties may be heard at a later date as set by the Court. The pendency of a dispute relating to a particular Contract shall

not prevent or delay the assumption or assignment of any other Contract or the closing of the Sale Transaction.

18. <u>Adequate Assurance</u>. The Buyer has provided adequate assurance of future performance under the Contracts within the meaning of sections 365(b)(1)(C), 365(f)(2)(B), and 365(b)(3) (to the extent applicable) of the Bankruptcy Code. Any Adequate Assurance Objections (as defined in the Sale Motion) that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are hereby overruled on the merits with prejudice. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the Trustee's assumption and assignment of the Contracts to the Buyer have been satisfied in accordance with the terms of this Order.

19. <u>Anti-Assignment Provisions Unenforceable</u>. No section or provision of any Contract that purports to (a) prohibit, restrict, or condition the assignment of a Contract, including, but not limited to, the conditioning of such assignment on the consent of any Counterparty to such Contract; (b) authorize the termination, cancellation, or modification of a Contract based on the filing of a bankruptcy case, the financial condition of the Debtor, or similar circumstances; (c) declare a breach or default as a result of a change in control in respect of the Debtor; or (d) provide for additional payments, profit sharing, penalties, conditions, renewals, extensions, charges, or other financial accommodations in favor of the Counterparty to a Contract, or modification of any term or condition upon the assignment of a Contract, or the occurrence of the conditions set forth in subsection (b) above, shall not have any force or effect, and any such section or provision constitutes an unenforceable anti-assignment provision under section 365(f) of the Bankruptcy Code and/or is otherwise unenforceable under section 365(e) of the Bankruptcy Code.

20.     Direction to Contract Counterparties.  All Counterparties to Contracts assigned to the Buyer in accordance with the terms of this Order and the Asset Purchase Agreement shall cooperate with, and expeditiously execute and deliver upon, any reasonable request of the Buyer for any instruments, applications, consents, or other documents that may be required or requested by any governmental unit or other public or quasi-public authority or other party to effectuate the applicable transfers in connection with the Trustee's assumption and assignment of the Contracts to the Buyer.

21.     Licenses and Permits.  To the extent provided in the Asset Purchase Agreement and available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and any other governmental authorization or approval of the Debtor's with respect to the Purchased Assets and the Contracts, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date. To the extent any license or permit necessary for the operation of the Purchased Assets is determined not to be an executory contract that may be assumed and assigned under section 365 of the Bankruptcy Code, the Buyer shall apply for and obtain any necessary license or permit promptly after the Closing Date, and such license or permit of the Debtor shall remain in place for the Buyer's benefit until a new license or permit is obtained.

22.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of this Chapter 7 Case or the consummation of the Sale Transaction.

23. <u>Good-Faith Purchaser</u>. The Buyer is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is entitled to all of the protections afforded thereby. Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity or enforceability of any sale, transfer, or assignment under the Asset Purchase Agreement, or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal prior to the Closing Date) and, notwithstanding any reversal, modification, or vacatur, any sale, transfer, or assignment under the Asset Purchase Agreement, shall be governed in all respects by the original provisions of this Order or the Asset Purchase Agreement, as applicable.

24. <u>No Avoidance</u>. Neither the Sale Transaction nor the Asset Purchase Agreement is subject to avoidance, and no party is entitled to any damages or other recovery in connection therewith under section 363(n) of the Bankruptcy Code.

25. <u>Bulk Sales</u>. No bulk sales law, bulk transfer law, or similar law of any state or other jurisdiction shall apply in any way to the Sale Transaction.

26. <u>Amendments</u>. The Asset Purchase Agreement may be amended, supplemented, or otherwise modified by the parties thereto and in accordance with the terms thereof, without further order of the Court; <u>provided</u>, <u>that</u>, any such amendment, supplement, or modification shall not have a material adverse effect on the Debtor's estate.

27. <u>Binding Order</u>. This Order and the Asset Purchase Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Trustee, the Debtor, and the Buyer, their respective successors and permitted assigns, all creditors of the Debtor (whether known or unknown), all Counterparties to any Contracts, and all Recording Officers.

Neither the Sale Transaction nor the Asset Purchase Agreement shall be subject to rejection or avoidance under any circumstances. This Order and the Asset Purchase Agreement shall inure to the benefit of the Debtor, its estate, its creditors, the Buyer, and their respective successors and assigns.

28. <u>Failure to Specify Provisions; Conflicts</u>. The failure specifically to include or mention any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Trustee, and the Buyer, that the Asset Purchase Agreement be authorized and approved in its entirety, including any amendments thereto as may be made by the parties thereto in accordance with the terms thereof and this Order.

29. <u>Further Assurances</u>. From time to time, as and when requested, all parties to the Sale Transaction shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to consummate the Sale Transaction, including such actions as may be necessary to vest, perfect, confirm, record or otherwise in the Buyer its right, title, and interest in and to the Purchased Assets and the assigned Contracts.

30. <u>Automatic Stay</u>. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified to the extent necessary, without further order of the Court, to allow the Buyer to deliver any notice provided for in the Asset Purchase Agreement and to take any and all actions permitted or required under the Asset Purchase Agreement in accordance with the terms and conditions thereof.

31.     No Stay of Order. Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, and any applicable Local Rules, this Order shall not be stayed and shall be effective and enforceable immediately upon entry. The provisions of this Order shall be self-executing. Time is of the essence in implementing the Asset Purchase Agreement and closing the Sale Transaction. Any party objecting to this Order or any of the relief granted herein must exercise due diligence in filing an appeal and obtaining a stay prior to the Closing of the Sale Transaction or risk its appeal being foreclosed as moot.

32.     Governing Terms. To the extent this Order is inconsistent with any prior order or pleading in this Chapter 7 Case, the terms of this Order shall govern. To the extent there is any inconsistency between the terms of this Order and the terms of the Asset Purchase Agreement, the terms of this Order shall govern.

33.     Retention of Jurisdiction. This Court shall retain exclusive jurisdiction to (a) interpret, implement, and enforce the terms and provisions of this Order, the Asset Purchase Agreement, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith; and (b) decide any issues or disputes concerning this Order, the Asset Purchase Agreement or the rights and duties of the parties hereunder or thereunder, including the interpretation of the terms, conditions and provisions hereof and thereof, and the status, nature, and extent of the Purchased Assets and the Contracts.

34.     The Trustee is authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

**Exhibit 1**

**<u>Asset Purchase Agreement</u>**