**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>JORIKI USA INC.,[1]<br><br>      Debtor. | )<br>)<br>) Chapter 7<br>)<br>) Case No. 25-10034 (LSS)<br>)<br>) **Related to Docket Nos. 33, 53, 58, 70** |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF THE COCA-COLA COMPANY REGARDING CHAPTER 7 TRUSTEE'S NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH**
<u>**SALE OF SUBSTANTIALLY ALL ASSETS**</u>

  The Coca-Cola Company ("<u>Coke</u>") as a contract counterparty to Joriki USA, Inc. (the "<u>Debtor</u>") in the above-captioned chapter 7 case (the "<u>Chapter 7 Case</u>"), by and through its undersigned counsel, hereby files this limited objection and reservation of rights (this "<u>Objection</u>") with respect to the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale of Substantially All Assets* [Docket No. 58] (as amended, revised, and supplemented, the "<u>Cure Notice</u>"). In support of this Objection, Coke respectfully states as follows:

**<u>RELEVANT BACKGROUND</u>**

  1. On January 12, 2025, (the "<u>Petition Date</u>") the Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). On January 14, 2025, Alfred T. Giuliano was appointed as Chapter 7 Trustee (the "<u>Trustee</u>").

  2. On February 5, 2025, the Trustee filed the *Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtor's Assets, (B)*

---

[1]  The last four digits of Joriki USA Inc.'s federal tax identification number are 5175. The location of Joriki USA Inc.'s mailing address is 575 Research Dr., Pittston, PA 18640.

*Authorizing the Trustee to Enter into One or More Stalking Horse Purchase Agreements and to Provide Bidding Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; and (II)(A) Approving the Sale of the Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. 33] (the "Bidding Procedures Motion").

3. On February 12, 2025, the Court entered an order approving the Bidding Procedures Motion and setting forth procedures regarding the sale of the Debtor's assets [Docket No. 53].

4. On February 12, 2025, the Trustee filed the Cure Notice and subsequently filed a revised Cure Notice on February 27, 2025 [Docket No. 70].[2]

5. Prior to the Petition Date, Coke contracted with the Debtor under that certain master agreement for contract manufacturing and packaging services dated July 7, 2021, as supplemented by that certain statement of work dated July 7, 2021 (the "Coke Contract").

6. Under the terms of the Coke Contract, the Debtor agreed to develop production capacity at its facility located in Pittston, PA (the "Pittston Facility") with the aim of producing approximately 19 million cases of Coke brand products, including Coke brand names such as Minute Maid, Gold Peak, and Simply Ades, with added incentives to produce in excess of 23 million cases of Coke products if the Debtor was able to scale up manufacturing capacity.

---

[2] The Trustee voluntarily agreed to extend Coke's objection deadline to March 7, 2025, at 4:00 p.m. (ET).

2

7. The Coke Contract is the single largest portion of the Debtor's contracted for production volume and places Coke as the Debtor's single largest customer.

**LIMITED OBJECTION**

I. **THE CURE NOTICE INCORRECTLY STATES THE DEBTOR'S CURE OBLIGATIONS UNDER THE COKE CONTRACT**

8. Coke does not object to the Debtor's assumption and assignment of the Coke Contract *per se*, but does object to the proposed cure amount of $0. Specifically, Coke objects to assumption and assignment of the Coke Contract without the Debtor: (a) curing all of the Debtor's known unpaid obligations under the Coke Contract and (b) assuming and assigning the Debtor's obligations to pay any unknown amounts that now might be or will become due and owing to Coke.

9. Section 365(b)(1) of the Bankruptcy Code provides, in pertinent part, that if there is a default under an executory contract or unexpired lease, a debtor may not assume such contract or lease unless the debtor:

> (A) cures, or provides adequate assurance that the [debtor] will promptly cure, such default . . . ; (B) compensates, or provides adequate assurance that the [debtor] will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

10. "To assume a contract, the debtor or the buyer must cure all existing defaults (or provide adequate assurance of a cure), basically putting the contract in the same place as if the bankruptcy did not happen." *In re Weinstein Co. Holdings LLC*, 997 F.3d 497, 505 (3d Cir. 2021) (*citing In re Columbia Gas Sys. Inc.*, 50 F.3d 233, 238 (3d Cir. 1995)). "The requirement to cure existing defaults before assuming a contract is motivated by fairness to the nonbankrupt

counterparty, as assuming the contract essentially provides a 'means whereby a debtor can force others to continue to do business with it when the bankruptcy filing might otherwise make them reluctant to do so.'" *Weinstein*, 997 F.3d at 505 (*citing In re Penn Traffic Co.*, 524 F.3d 373, 382 (2d Cir. 2008)). "Cure is a critical component of assumption… the language and intent behind §365 is decisive and it was clearly intended to insure that the contracting parties receive the full benefit of their bargain if they are forced to continue performance." *In re Thane Intern., Inc.*, 586 B.R. 540, 549 (Bankr. D. Del. 2018) (internal citation omitted); *In re Dura Automotive Sys., LLC*, 628 B.R. 750, 754 (Bankr. D. Del. 2021) ("If a debtor wishes to assume an executory contract, section 365(b)(1)(A) requires it to cure, or provide adequate assurance that it will promptly cure, among other things, the monetary defaults thereunder").

11. "The trustee may assign an executory contract or unexpired lease of the debtor only if the trustee assumes such contract or lease in accordance with the provisions of [§365]" *Thane Intern.*, 586 B.R. at 546; 11 U.S.C. §365(f)(2)(A). "The debtor has the burden to show that a contract is assumable and that Section 365 has been met." *Id*.

12. Accordingly, the proposed assumption and assignment of the Coke Contract requires payment to Coke of all amounts due under the Coke Contract, whether known or unknown. The Trustee may not assume the Coke Contract, nor assign it to a winning bidder, absent Coke receiving the full benefit of its bargain given Coke would be forced to continue performance.

13. This is especially true under the circumstances of this case as requiring Coke to continue performance is not solely a matter of the Debtor's past failure to perform. Rather, at this stage, Coke has serious concerns whether any winning bidder will be able to perform and achieve the production output and volume contemplated under the Coke Contract. If a winning bidder

steps into the Debtor's shoes and fails to perform, Coke will continue to incur substantial losses under the Coke Contract and be forced to obtain alternative performance.

14. Simply put, if the Trustee assumes the Coke Contract, Coke is entitled to payment of its full cure amount under the Bankruptcy Code.[3] Recognizing that the Coke relationship would likely be critical to any potential purchaser of the Debtor's assets, Coke remains open and willing to discussing new arrangements with any potential purchaser outside of the confines of the existing Coke Contract.

### A. Known Cure Amounts as of March 7, 2025

15. The Debtor's failure to list a cure amount for the Coke Contract in the Cure Notice excludes certain known cure amounts due and owing to Coke. The known Coke Contract payment defaults as of March 7, 2025, amount to $40,875,663, and such amounts may continue to accrue (the "Cure Amount"). The current Cure Amount is inclusive of several damages calculations, including but not limited to, equipment removal costs, temporary labor, destruction costs relating to unsold product and materials, packaging and ingredients, and $30 million in liquidated damages caused by the Debtor's delays and failure to perform under the Coke Contract.

16. As to the liquidated damages, the Coke Contract set forth a specific production timeline for the Debtor to achieve. The Coke Contract contemplated the Debtor giving Coke notice that the facility was fully commissioned by January 1, 2023. After such date, the Coke Contract contemplated the Debtor producing a minimum volume of 17,500,000 cases per year. If the Debtor failed to meet this threshold, Coke would be required to seek alternative performance from another

---

[3] The Cure Notice lists a second contract with Coke for a purported "Equipment Lease." Upon review, Coke has determined that no such equipment lease exists and that any equipment leased to the Debtor by Coke is leased under the terms of the Coke Contract itself. The Trustee must assume the Coke Contract in full and may not assume it in portions. *See Cinicola v. Scharffenberger*, 248 F.3d 110, 119 (3d Cir. 2001) ("If the trustee meets the assumption requirements under § 365, it must assume the executory contract entirely").

5

manufacturer in order to meet market demands for its products. As such, the Coke Contract provided for a shortfall fee of $0.80 per case to compensate Coke for the difficulty in obtaining alternative performance.

17. While the parties agreed to compensating Coke with a small fee for minor shortfalls in production under Section 7 of the Coke Contract, the parties also agreed to a larger measure of liquidated damages in the event of drastic failures to achieve production output. Specifically, Schedule E of the Coke Contract contains criteria the Debtor was required to meet regarding build, quality standards, operations, accessibility, timing, and other critical requirements concerning the Pittston Facility. Under Section 1.4 of the statement of work to the Coke Contract, the Debtor would be liable to Coke for liquidated damages if it failed to get the facility up and running in accordance with the facility build requirements, which criteria were necessary in order to meet Coke's production requirements.

18. Under Section 1.4, if the Debtor failed to meet the standards outlined in Schedule E, it would be liable to Coke for $10,000 per day until such delayed implementation of the facility build requirements were met. However, if the requirements remained unmet after April 30, 2023, the Debtor would be liable to Coke for liquidated damages of $4,750,000 for each month after April 30, 2023. As contemplated by Section 1.4 of the Coke Contract statement of work, the liquidated damages ceased accruing on November 1, 2023, the point at which Coke would have the right to terminate the Coke Contract given its need to seek alternative performance to meet the market demand for its products.

19. The Debtor failed to meet the facility build requirements on the timeline provided under the Coke Contract. The Debtor was in breach of the Coke Contract from as early as

November 14, 2022, and the facility build requirements in Schedule E remain unfulfilled to this date.

20. The Debtor's failure to scale up production has resulted in the Debtor owing Coke liquidated damages under the terms of the Coke Contract of $30,170,000 in addition to approximately $10,705,663 in damages for the other line items described above totaling $40,875,663.

### B. Unknown Damage Amounts

21. Additionally, as a result of the shutdown of the Debtor's facility, damages continue to accrue under the Coke Contract. The measure of such additional damages remains uncertain. In addition to the current known Cure Amount, the Trustee must cure any presently unknown damages that exist or accrue under the Coke Contract prior to any assumption and assignment to a winning bidder.

### II.  NEITHER THE TRUSTEE NOR ANY BIDDERS HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE

22. Throughout the sale process, the Trustee has obtained Court approval for bidding procedures, marketed the assets, considered multiple bids, and intends to hold an auction for the Debtor's assets. Despite this progress to date, neither the Trustee, nor any of the prospective purchasers of the Debtor's assets have shared sufficient information with Coke such that Coke can be adequately assured of future performance under the Coke Contract.

23. Once the auction concludes and the winning bidder of the Debtor's assets has been identified, the Trustee must provide Coke with all necessary information establishing the winning bidder's ability to perform under the Coke Contract, including the winning bidder's ability to produce the volume of product contemplated thereunder. Section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that a debtor may assign an executory contract or unexpired lease

only if "(A) the [debtor] assumes such contract or lease in accordance with the provisions of this section; and (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." 11 U.S.C. § 365(f)(2); *see also Thane Intern.*, 586 B.R. at 549 (holding cure is pre-requisite to assumption and assignment). Accordingly, prior to entry of any order granting assumption and assignment of the Coke Contract to the winning bidder, Coke must be provided with adequate assurance of future performance by such winning bidder.

24. Absent such information, including a detailed plan for scaling production at the Pittston Facility, the Court should not permit assumption and assignment to the winning bidder. *See* 11 U.S.C. § 365(1)(C) ("If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee… provides adequate assurance of future performance under such contract or lease"). In the ordinary course of its business, Coke requires such information prior to entering into long term contracts with manufacturers in order to assess a company's financial information, history within the industry, and ability to produce product at scale.

## RESERVATION OF RIGHTS

Coke reserves its rights to amend and/or supplement this objection, as circumstances might require, including, without limitation, regarding the terms of any proposed order approving assumption of the Coke Contract.

*[Remainder of Page Intentionally Left Blank]*

**CONCLUSION**

WHEREFORE, Coke respectfully requests that the Court: (a) condition assumption of the Coke Contract on entry of an order consistent with the Objection; and (b) grant Coke such other and further relief as the Court may deem just or proper.

Dated: Wilmington, Delaware
       March 7, 2025

**MCDERMOTT WILL & EMERY LLP**

*/s/ David R. Hurst*
David R. Hurst (I.D. No. 3743)
Andrew A. Mark (I.D. No. 6861)
1000 N. West Street, Suite 1400
Wilmington, Delaware 19801
Telephone:  (302) 485-3900
Facsimile:  (302) 351-8711
Email:  dhurst@mwe.com
         amark@mwe.com

- and -

Daniel M. Simon
1180 Peachtree Street NE, Suite 3350
Atlanta, Georgia 30309
Telephone:  (404) 260-8535
Facsimile:  (404) 393-5260
Email:  dsimon@mwe.com

*Counsel to The Coca-Cola Company*